Sidney GRIFFIN, Jeff Cleckley, and Louise Cleckley, Plaintiffs,

v.

CITY OF CLANTON, ALABAMA, et al., Defendants.

Civil Action No. 94–A–1527–N.

United States District Court, M.D. Alabama, Northern Division.

July 1, 1996.

Rhonda G. Jones–Hardesty, Clanton, AL, Joel S. Rogers, III, Dale Rouse Waid, Rogers & Waid, Clanton, AL, for plaintiffs Sidney Griffin, Louise Cleckley, Jeff Cleckley.

Norman Gunter Guy, Jr., Brannan, Guy & Birchfield, Montgomery, AL, for defendants Chilton County Commission, Chilton County Sheriff's Department, Neeley Strength, Individually and in His Official Capacity as Sheriff of Chilton County, Kent Smith, Deputy, Individually and in His Official Capacity as Officer and Agent of the Chilton County Sheriff's Department and of the Chilton County Commission.

James W. Porter, II, Porter, Porter & Hassinger, Birmingham, AL, for defendants City of Clanton, a Municipal Corporation, John Stephens, Individually and in His Capacity as a Police Officer and Agent of the City of Clanton, Al Bearden, Individually and in His Capacity as a Police Officer and Agent of the City of Clanton.

Timothy Patrick Donahue, John C. Webb, V, Bradford & Donahue, P.C., Birmingham, AL, for defendants City of Thorsby, a Municipal Corporation, Mike Cleckler, Individually and in His Official Capacity as a Police Officer and Agent of the City of Thorsby.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on the Defendants' Motion for Summary Judgment. The Defendants, the City of Clanton, John Stephens ("Stephens"), and Al Bearden ("Bearden"), filed their Motion for Summary Judgment on January 30, 1996. On February 22, 1996, the Plaintiffs, Sidney Griffin ("Griffin"), Jeff Cleckley, and Louise Cleckley, filed a brief in opposition to the Defendants' Motion for Summary Judgment. For the following reasons, this court finds that

the Defendants' Motion for Summary Judgment is due to be GRANTED.

## II. *FACTS*

This case is a consolidation of three actions originally filed in state court but subsequently removed to federal court. It arises out of events surrounding the arrests of Jeff Cleckley and Sidney Griffin on October 27, 1993 at the house of Louise Cleckley, the mother of Jeff Cleckley and the aunt of Sidney Griffin. Although many of the facts are in dispute, the version most favorable to the Plaintiffs, including uncontroverted facts submitted by the Defendants, is as follows:

At approximately 11:30 pm on October 27, 1993, Officer Al Bearden, a police officer employed by the City of Clanton, Alabama, stopped a vehicle along Hinkle Road at Second Avenue in the City of Clanton. Officer Bearden noticed the vehicle because it was making loud noises and was emitting smoke from its exhaust system. He also noticed that the vehicle was traveling in excess of the 30 miles per hour speed limit.

Sidney Griffin was the operator of the vehicle and Jeff Cleckley was the lone passenger. Officer Bearden approached the vehicle and asked the driver for his license. When Griffin identified himself, Officer Bearden smelled alcohol. As a result, Officer Bearden asked Griffin if he had been drinking. Griffin admitted that he had consumed a few drinks, whereupon Officer Bearden asked him to perform several field sobriety tests. According to Officer Bearden, Griffin staggered as he walked toward the back of the vehicle and then failed two sobriety tests. At this point, Officer John Stephens arrived to assist Officer Bearden.

According to the Plaintiffs, Griffin was not placed under arrest by either officer. Instead, Officer Stephens slammed Griffin into Officer Bearden's patrol car, causing Griffin, out of concern for his own personal safety, to flee to his aunt's house at 118 Hinkle Road, approximately one block away. Griffin, however, presented no evidence to indicate how hard he was pushed by Stephens. The Plaintiffs also claim that Officer Stephens did not immediately pursue Griffin, but called for assistance and remained by the patrol car for a time before proceeding to 118 Hinkle Road.

After Griffin fled, Officer Bearden gave Jeff Cleckley permission to leave the scene. Cleckley then walked to his mother's home at 118 Hinkle Road.

Officer Mike Cleckler, a police officer employed by the City of Thorsby, responded to Officer Stephens' call for assistance. When he arrived at the scene of the traffic stop, he spotted Officer Stephens near 118 Hinkle Road. Stephens informed Cleckler that they were pursuing a person who was on the back porch of the house, but he did not explain why they were chasing him. Neither officer knew who owned the house.

When the officers approached the porch, Griffin was banging on the door of the house and yelling. Louise Cleckley awoke to hear her nephew's shouts, and she identified him through the backdoor. The Plaintiffs claim that there were no lights on outside of the house and that Louise Cleckley saw no police officers and heard no voices other than that of her nephew. The Plaintiffs further claim that, as Louise Cleckley let Griffin into her home, Stephens and Cleckler burst through the porch door and the backdoor and into the house without warning.

The Plaintiffs allege that Stephens shoved Louise Cleckley as he came into the house and that both officers ignored her when she questioned them and demanded that they leave her home. Instead, they pursued Griffin into the living room where he was cornered. Stephens allegedly hit Griffin with his night stick, and Cleckler assisted in attempting to subdue him. Griffin struggled with the officers and was pushed over furniture and onto the floor.

At this point, Deputy Ken Smith and Officer Hedgewood of the City of Clanton Police Department entered the home, and the struggle with Sidney Griffin ensued. Shortly thereafter, Jeff Cleckley entered the house through the front door after hearing his mother scream and seeing police cars around the house. According to the Plaintiffs, Cleckler pushed Jeff Cleckley up against a wall and held him there, refusing to permit him to go to his mother who continued to scream. Cleckler told him to "calm down," but Cleckley could not calm down because he

was concerned about his mother. Cleckler did not know who Jeff Cleckley was until he identified himself to Cleckler. Then, Officer Stephens ordered Jeff Cleckley out of the house and informed him that he was under arrest.

Meanwhile, Griffin was handcuffed and lying face down on the floor, still struggling, with two officers on top of him. At this point, Officer Bearden entered the home. He did not see that Griffin was handcuffed and believed that pepper spray was necessary to subdue him. He waited for an opportunity when he would not hit any of the officers, and then he sprayed Griffin. According to the Plaintiffs, he pulled Griffin's head back without warning and sprayed him directly in the face. Due to the noxious pepper fumes, all of the officers vacated the house, leaving Griffin lying on the floor. Allegedly, none of the officers assisted Griffin in leaving the home until Officer Darryl Moore, a state trooper who had recently arrived on the scene, removed him.

Sidney Griffin was arrested and charged with driving under the influence of alcohol ("D.U.I."), resisting arrest, and harassment. Ultimately, the D.U.I. and harassment charges were dropped, and Griffin pled guilty to resisting arrest. Jeff Cleckley was also arrested and charged with resisting arrest and harassment. He was tried on both charges in the City of Clanton Municipal Court. The court directed a verdict for Jeff Cleckley on the harassment charge, and he was acquitted on the charge of resisting arrest. Louise Cleckley was not charged with an offense.

On October 26, 1994, the Plaintiffs filed individual actions in the Circuit Court of Chilton County seeking compensatory and punitive damages against Officer Stephens, Officer Bearden, the City of Clanton, and other Defendants who have since been dismissed from this suit. On December 6, 1994, the cases were removed to the United States District Court for the Middle District of Alabama, and they were consolidated on January 9, 1995 by order of this court. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1367. In their briefs, the parties agree that the Complaints assert the following claims:

In his Complaint, Sidney Griffin asserts claims against the individual officers under 42 U.S.C. § 1983 for false arrest, for use of excessive force, and for violation of his right to be free from intimidation. He also seeks to impose liability on the City of Clanton for these violations, alleging that they occurred due to the city's failure to adequately train the officers involved in this case. Additionally, Griffin asserts claims against the Defendants under 42 U.S.C. § 1985 for conspiracy to deprive him of his civil rights. Finally, he asserts state law claims against the Defendants for false imprisonment and assault and battery, and he asserts claims against Officer Stephens for making false statements against him.

In his Complaint, Jeff Cleckley asserts claims against the individual officers under 42 U.S.C. § 1983 for false arrest and for violation of his right to be free from intimidation. He also seeks to impose liability on the City of Clanton for these violations, alleging that they occurred due to the city's failure to adequately train the officers involved in this case. Additionally, he asserts claims against the Defendants under 42 U.S.C. § 1985 for conspiracy to deprive him of his civil rights. Finally, he asserts state law claims against the Defendants for false imprisonment.

In her Complaint, Louise Cleckley asserts claims against the individual officers under 42 U.S.C. § 1983 for violation of her right to be free from an unreasonable search of her home and for violation of her right to be free from intimidation. She also seeks to impose liability on the City of Clanton for these violations, alleging that they occurred due to the city's failure to adequately train the officers involved in this case. Finally, she asserts claims under 42 U.S.C. § 1985 for conspiracy to deprive her of her civil rights.

On December 6, 1994, the Defendants filed a Motion to Dismiss the Complaints. On August 3, 1995, this court dismissed all claims under 42 U.S.C. § 1983 based on a theory of respondeat superior. This court also dismissed causes of action against the City of Clanton for false imprisonment and

wrongful arrest. Additionally, this court refused to grant qualified immunity to Officers Bearden and Stephens on the grounds that the facts of the case at that time were too unclear to determine the issue. Finally, this court dismissed all claims for punitive damages under 42 U.S.C. § 1983 against the City of Clanton.

On January 30, 1996, the City of Clanton, Officer Stephens, and Officer Bearden filed a Motion for Summary Judgment. On February 22, 1996, the Plaintiffs filed a brief in opposition to the Defendants' Motion for Summary Judgment.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2553.

■ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. DISCUSSION

The Defendants argue that they are entitled to summary judgment on all of the Plaintiffs' § 1983 claims, on the civil rights conspiracy claims, and on the pendant state law claims.

### A. THE SECTION 1983 CLAIMS

■ When an individual seeks redress in the courts for a violation of his constitutional rights, he may not sue directly under the United States Constitution. Rather, he must make his claim under 42 U.S.C. § 1983. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In this case, the Plaintiffs bring suit against the Defendants under § 1983 for violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution. Sidney Griffin and Jeff Cleckley contend that the Defendants subjected them to false arrests. Griffin alone contends that the Defendants subjected him

to excessive force, and Louise Cleckley alone contends that she was subjected to an unreasonable search of her home. Finally, all of the Plaintiffs contend that the Defendants violated their right to be free from intimidation.

### 1. *False Arrest*

Both Sidney Griffin and Jeff Cleckley contend that the Defendants subjected them to false arrest in violation of the Fourth and Fourteenth Amendments. In response, the Defendants argue that they are entitled to qualified immunity against these claims.

#### a. **Sidney Griffin**

▮▮▮ In Griffin's case, this court need not reach the issue of qualified immunity because the facts clearly indicate that no constitutional violation occurred. Under the Fourth Amendment, warrantless seizures are permitted provided that they are made with probable cause. *See Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir.1995). "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she had reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir.1990)).

The undisputed facts in this case confirm that Officer Bearden had probable cause to arrest the Plaintiff for driving under the influence of alcohol. *See* Ala.Code § 32–5A–191(a)(2). Officer Bearden initially stopped Griffin's vehicle because it was speeding and because it was making loud noises and was emitting smoke from its exhaust system. These observations were sufficient to enable Officer Bearden to stop the vehicle, making a "traffic arrest" of the operator. *See Pittman v. State*, 541 So.2d 583, 585 (Ala.Crim.App. 1989).

During the course of the traffic arrest, Officer Bearden smelled alcohol on Griffin's breath. At that point, he had reasonable suspicion to believe that Griffin was operating the vehicle under the influence of alcohol. *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct.

1868, 1883–84, 20 L.Ed.2d 889 (1968). The presence of reasonable suspicion enabled Officer Bearden to investigate further. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) (An officer "whose observations lead him to reasonably suspect that a particular person has committed ... a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion.").

When Officer Bearden asked Griffin if he had been drinking, Griffin admitted that he had consumed a few drinks. As a result, Officer Bearden asked Griffin to perform field sobriety tests. According to Officer Bearden, Griffin staggered when he walked towards the back of his vehicle, and he failed two sobriety tests. With this information, Bearden had probable cause to arrest Griffin for driving under the influence of alcohol. *See Buckner v. City of Huntsville*, 549 So.2d 451, 454 (Ala.1989) (A person is driving under the influence when he has "consumed such an amount of alcohol as to affect his ability to operate a vehicle in a safe manner.").

▮▮▮ The fact that the officers did not have a warrant to arrest Griffin when they eventually apprehended him in Louise Cleckley's house does not effect the validity of his arrest. Under the Fourth Amendment, law enforcement officers do not need a warrant to arrest a suspect in a third party's home where probable cause to make the arrest is accompanied by exigent circumstances. *See Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981); *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976); *Warden v. Hayden*, 387 U.S. 294, 298 (1967). Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir.1984). Accordingly, a warrantless entry and arrest is permissible when law enforcement officers are in "hot pursuit" of a fleeing suspect. *See Santana*, 427 U.S. at 42, 96 S.Ct. at 2409.

In this case, the facts demonstrate that the officers were in hot pursuit of Griffin when

they entered Louise Cleckley's house. Although the Plaintiffs contend that Officer Stephens called for assistance and remained by his police vehicle before proceeding one block to the house where Griffin was arrested, the uncontroverted evidence indicates that Stephens never let the trail cool down. He merely took prudent safety precautions by waiting for backup before tracking Griffin onto private residential property.

When Officer Cleckler arrived at the scene after responding to the call for assistance, Officer Stephens clearly had not lost Griffin's trail. He was standing in the street near Louise Cleckley's house, and he told Officer Cleckler that Griffin was on the back porch. Although the parties present no evidence to indicate how much time had elapsed since Griffin's flight, the pursuit was so hot that Griffin had yet to gain admittance to the house even though he was banging on the back door and yelling. The officers then closed in on Griffin and were about to apprehend him when Louise Cleckley opened the door of her home. At that point, the officers were justified in following Griffin into the house. "[A] suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place." *Id.* at 43, 96 S.Ct. at 2410.

Thus, due to the existence of probable cause to arrest Griffin and the presence of exigent circumstances that justified entry into Louise Cleckley's house, no constitutional violation occurred when Griffin was ultimately arrested. Accordingly, the Defendants' Motion for Summary Judgment is due to be GRANTED as to all Defendants on Griffin's § 1983 claim for wrongful arrest.

### b. Jeff Cleckley

■■■■ In Jeff Cleckley's case, the facts are quite different, but the court still finds that the individual officers are entitled to summary judgment under the doctrine of qualified immunity. An official sued as an individual is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "For qualified immunity to be sur-

rendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir.1994). " 'If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.' " *Kelly v. Curtis,* 21 F.3d 1544, 1550 (11th Cir.1994) (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified on other grounds,* 14 F.3d 583 (11th Cir.1994)).

■■■■ Under these favorable standards, the court concludes that the Defendants are entitled to qualified immunity on Cleckley's claim of false arrest. Although probable cause to arrest Cleckley may in fact have been lacking, the relevant inquiry for the purpose of qualified immunity is whether "arguable probable cause" existed. *See Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990). Qualified immunity protects an officer where a "reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Thus, officers are entitled to qualified immunity even where they "reasonably but mistakenly conclude that probable cause is present." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Post,* 7 F.3d at 1558 (officer need only have "arguable probable cause" to be entitled to qualified immunity).

Here, Officer Stephens had arguable probable cause to arrest Cleckley because a reasonable officer in Stephens' shoes could have believed that Cleckley had interfered with the arrest of Sidney Griffin. Stephens was aware that Cleckley was Griffin's friend because Stephens had been present at the scene of the traffic stop. Stephens, however, was not aware that Cleckley was entering his own home, and thus, reasonably assumed that his purpose was to interfere with the arrest of Sidney Griffin.

In fact, whether intentional or not, Jeff Cleckley did interfere with Griffin's arrest. When Cleckley entered the home, he was visibly excited and caused Officer Cleckler to withdraw from the struggle with Griffin in order to deal with him. Cleckley, by his own admission, could not calm down, and this required Officer Cleckler to hold him against the wall. As a result, the other officers had to subdue Griffin without Cleckler's assistance.

Once Sidney Griffin had been overpowered, Officer Stephens—who did not know that Cleckley was standing in his own home, but did know that Cleckley had distracted another officer during the struggle with Sidney Griffin—placed Cleckley under arrest for harassment and resisting arrest. Under these circumstances, the court cannot say that Officer Stephens acted unreasonably and that a reasonable officer would have determined that it would be unlawful to arrest Cleckley. In any event, the parties have not cited, and the court cannot find, case law, in factual terms, that clearly compels the conclusion that, at the time, a reasonable officer would have known that Officer Stephens' conduct violated federal law. Therefore, he is entitled to qualified immunity.

Accordingly, the Defendants' Motion for Summary Judgment is due to be GRANTED to the extent that Jeff Cleckley seeks to hold Officer Stephens liable for false arrest under § 1983. Moreover, because the facts do not implicate any other individual Defendant in Cleckley's arrest, the Defendants' Motion for Summary Judgment is due to be GRANTED as to all the other individual officers on this cause of action.

### 2. *Excessive Force*

Sidney Griffin also claims that, when the Defendants arrested him, they used excessive force in violation of the Fourth and Fourteenth Amendments. Again, the Defendants contend that his claim is barred by the doctrine of qualified immunity.

█ Fourth Amendment excessive force claims are measured by a standard of objective reasonableness: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circum-stances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). Whether a specific use of force is objectively reasonable turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. *See Graham*, 490 U.S. at 394, 109 S.Ct. at 1872. Use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Because this standard establishes no bright line, qualified immunity applies unless clearly established law would inevitably lead every reasonable officer to conclude that the force used was excessive. *Post*, 7 F.3d at 1559.

█ During the events underlying this case, the Defendants used force against Griffin on two separate occasions: first, during the initial traffic stop; and then in Louise Cleckley's house. Griffin claims that, at the initial traffic stop, Officer Stephens slammed him into Officer Bearden's patrol car, causing him to flee for his personal safety. He does not claim that any physical injury resulted, and he presents no other evidence to indicate the severity of the force used against him. Thus, the only evidence the court has to determine the reasonableness of the force used is the strong connotation of the word "slam" and Griffin's allegation that the action caused him to flee for his personal safety. In light of the officers' belief that Griffin was intoxicated and had just committed a crime, the court is unwilling to say that such a use of force was unreasonable. Therefore, this court concludes that the Defendants did not use excessive force at the initial traffic stop.

█ Griffin also claims that the Defendants used excessive force when they eventually apprehended him at Louise Cleckley's

home. During the events at Louise Cleckley's home, there were two uses of force that the court perceives to be at least arguably unreasonable: Officer Stephens' alleged use of his night stick on Griffin, and Officer Bearden's use of pepper spray on Griffin. As previously stated, the officers involved are entitled to qualified immunity unless clearly established law would lead every reasonable officer to conclude that the force used was excessive. *Post,* 7 F.3d at 1559.

Applying this standard, the court concludes that the individual officers are entitled to qualified immunity for their use of force in Louise Cleckley's house because, in both cases, a reasonable officer could have concluded that the force used was lawful under the circumstances. By the time Officer Stephens caught up to Griffin in Louise Cleckley's living room, Griffin had already fled from him twice—once at the traffic stop, and again from Louise Cleckley's back porch into the house. Furthermore, he suspected that Griffin was intoxicated. As a result, Officer Stephens had good cause to believe that Griffin would continue to resist arrest—as proved to be the case—when he was confronted inside the house. Therefore, Stephens' use of his night stick was not completely unreasonable.

Although the court can conceive of uses of the night stick that would have been unreasonable under the circumstances, the Plaintiffs have offered no evidence to indicate the magnitude of the force or the manner in which Stephens used the night stick against Griffin. Furthermore, Griffin does not allege that the night stick caused him physical injury or even that he felt pain. In the absence of evidence to indicate that the night stick was used with great force, this court finds that a reasonable officer could have concluded that some use of the night stick was lawful. Accordingly, Officer Stephens is entitled to qualified immunity against Griffin's § 1983 claim for excessive force.

 Additionally, the court believes that a reasonable officer could have concluded that Officer Bearden's use of pepper spray against Griffin was lawful under the circumstances. When Bearden arrived at the scene, he suspected that Griffin was intoxicated, and he knew that Griffin had already fled from arrest once. By all accounts, the scene Bearden encountered was chaotic. Griffin was on the ground struggling with a number of officers; Jeff Cleckley was visibly excited and was being held against the wall by Officer Cleckler; and Louise Cleckley was screaming. Although Griffin was handcuffed at the time, Officer Bearden could not see the cuffs because two officer were on top of Griffin. Under these circumstances, the court believes that it was not unreasonable for Bearden to attempt to gain control of the situation by using pepper spray on Griffin.

Although the Plaintiffs suggest that the manner in which Griffin was allegedly sprayed—in the face—transformed the use of the pepper spray into excessive force, this court believes that, under the circumstances, Officer Bearden had a reasonable justification for doing so. He sought to spray Griffin in manner that would not disable the other officers. Although it may seem somewhat cruel to spray someone directly in the face, this appears to have been the prudent course since it took a number of officers just to hold Griffin down. Had Bearden diffused the spray more generally, he would have risked disabling the other officers, and Griffin might have had the opportunity to flee once again or to inflict harm upon an officer or himself. Moreover, as a means of imposing force, pepper spray is generally of limited intrusiveness. It is designed to disable a suspect without causing permanent physical injury— which is what appears to have happened here because the Plaintiffs have presented no evidence that Griffin suffered any physical injury.

As a result, this court concludes that Officer Bearden is entitled to qualified immunity on Griffin's § 1983 claim for excessive force.

For the reasons given above, the Defendants' Motion for Summary Judgment on Plaintiff Griffin's § 1983 claim for excessive force is due to be GRANTED as to both of the individual officers.

### 3. Unreasonable Search

 Louise Cleckley claims that the Defendants subjected her to an unreasonable search in violation of the Fourth and Four

teenth Amendments when they entered her house without a warrant. Again, the Defendants contend that his claim is barred by the doctrine of qualified immunity.

■ Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). A warrantless entry into a private home and a subsequent search are allowed, however, where probable cause to arrest a suspect is accompanied by exigent circumstances. *See Hayden,* 387 U.S. at 298, 87 S.Ct. at 1645.

In this case, the officers had probable cause to arrest Sidney Griffin and were in "hot pursuit" of him. *See Santana,* 427 U.S. at 42, 96 S.Ct. at 2409–10. Thus, there were exigent circumstances justifying the warrantless entry into Louise Cleckley's house, and the officers did not violate her right to be free from an unreasonable search. Moreover, the facts indicate that the officers limited their presence in her house to accomplishing the objective of apprehending Sidney Griffin. There is no evidence indicating that they conducted a search of the premises for anyone or anything other than Griffin. Accordingly, the Defendants' Motion for Summary Judgment is due to be GRANTED on her claims of unreasonable search.

### 4. *Intimidation*

■ All of the Plaintiffs claim that the Defendants violated their constitutional right to be free from intimidation. The court, however, is unable to find constitutional or federal statutory authority that establishes a right to be free from intimidation under the circumstances in this case, and the parties have not supplied any authority to demonstrate the existence of such a right. Accordingly, the court concludes that the Plaintiffs' § 1983 claims for violation of the right to be free from intimidation are due to be DISMISSED.

### 5. *Municipal Liability*

The Plaintiffs also seek to hold the City of Clanton liable under § 1983 for alleged constitutional violations perpetrated by the individual officers in this case. They argue that the violations occurred because the officers were inadequately trained by the municipalities. The Defendants, however, claim that they are entitled to summary judgment on the § 1983 claims because the Plaintiffs have failed to present sufficient evidence to establish municipal liability.

On several of the Plaintiffs' § 1983 claims, the City of Clanton is already entitled to summary judgment because this court has concluded that no constitutional violation occurred. On several other claims, however, this court has determined that the individual officers are entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity does not shield a municipality from liability under § 1983.

■ To attribute liability to a municipality under § 1983, a plaintiff must demonstrate that the constitutional violation at issue was caused by an official policy or custom of the municipality. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *see also Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (a plaintiff must show that the official policy or custom was "the moving force of the constitutional violation."). Thus, at the very least, a plaintiff must identify a municipal policy and then demonstrate "an affirmative link between the policy and the particular violation alleged." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). Inadequate police training by a municipality can rise to the level of a 'policy or custom' that is actionable under § 1983 where the failure to train amounts to 'deliberate indifference' to the rights of persons in the jurisdiction. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

■ In this case, the Plaintiffs have failed to present sufficient evidence to establish municipal liability. Although they contend that the alleged violations resulted from a general failure to adequately train the officers involved, they have not identified any specific policies to which such violations can be attributed. In other words, they ask the

court to infer the existence of a culpable policy from the actions of the individual officers in this case. This the court is unwilling to do. Deliberate indifference by a municipality cannot be demonstrated merely by examining the actions of police officers during a single incident of unconstitutional conduct. *See Tuttle,* 471 U.S. at 821, 105 S.Ct. at 2435. In such cases, deliberate indifference can only be demonstrated through independent proof that the policy that allegedly caused the violation resulted from a deliberate choice of a municipal policy maker. *Id.* at 823, 105 S.Ct. at 2436. Thus, without evidence of a continuous course of conduct or evidence of a specific municipal policy, the Plaintiffs cannot establish municipal liability in this case. Accordingly, the Defendants' Motion for Summary Judgment is due to be GRANTED on all outstanding § 1983 claims against the City of Clanton.

## B. CIVIL RIGHTS CONSPIRACY

[29, 30] The Plaintiffs also assert claims against the Defendants, under 42 U.S.C. § 1985(3), for conspiracy to deprive them of their civil rights. The Defendants contend that they are entitled to summary judgment on these claims because the Plaintiffs have failed to present sufficient evidence to establish the existence of a conspiracy under § 1985(3).

> The elements of a cause of action under § 1985(3) are: (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Lucero v. Operation Rescue,* 954 F.2d 624, 627 (11th Cir.1992); *see also Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1537 (M.D.Ala.1994). The second element of the cause of action requires the Plaintiffs to make a showing that the Defendants' actions were motivated by racial or other class-based invidious discrimination. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91

S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Lucero,* 954 F.2d at 627. In this case, all of the Plaintiffs except possibly for Louise Cleckley have failed to present evidence to show that they are members of a protected class. For the purpose of this motion, the court will assume, without holding, that gender-based discrimination is actionable under § 1985(3). *See Saville,* 852 F.Supp. at 1538 (holding that § 1985(3) protects women as a class). In her case, however, the Plaintiffs have failed to present evidence to support a finding that the Defendants directed their conduct toward her because she is a woman. *See Lucero,* 954 F.2d at 627 (Plaintiffs must "identify 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind defendants' actions") (citing *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798). In fact, the uncontroverted evidence indicates that the officers who entered her home did not know who lived there. Accordingly, none of the Plaintiffs can maintain a claim for civil rights conspiracy under 42 U.S.C. § 1985(3), and the Defendants' Motion for Summary Judgment on is due to be GRANTED.

## C. PENDENT STATE LAW CLAIMS

Finally, the Plaintiffs assert claims against the Defendants under Alabama law for false imprisonment, assault and battery, and for making false statements. This court, however, chooses to exercise its discretion to decline supplemental jurisdiction over the pendent state law claims because summary judgment is due to be granted in favor of the Defendants on all of the federal claims in this case. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Plaintiffs' state law claims are due to be DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367(c)(3), for lack of subject matter jurisdiction.

## V. CONCLUSION

Based on the foregoing reasoning, the court concludes that the Defendants' Motions for Summary Judgment are due to be GRANTED in their entirety, except as to state law claims which will be dismissed without prejudice. A separate order will be en-

tered in accordance with this memorandum opinion.