**James Russell LOGGINS, Plaintiff,**

v.

**John JEANS, John Seay, and Cherokee County, Defendants.**

No. 1:92–cv–2084–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 17, 1993.

---

Thomas Anderson Roach, Jr., Roach Hasty & Geiger, Canton, GA, for plaintiff.

Jack G. Sloyer, Jr., Jeffrey Terrence Wise, Sullivan Hall Booth & Smith, Atlanta, GA, for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Defendants John Seay and Cherokee County's Motion to Dismiss or, in the alternative, for Summary Judgment [11], Plaintiff's Motion to Extend Time to Answer Defendants' Motion for Summary Judgment [17], and Defendants John Seay and Cherokee County's Request for Oral Argument [21]. The Court GRANTS Plaintiff's Motion to Extend Time, DENIES Defendants' Request for Oral Argument, and GRANTS Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff James Russell Loggins alleges that on January 5, 1991, Defendant John Jeans ("Jeans"), an officer with the Cherokee County Sheriff's Department, assaulted him and arrested him without probable cause. Plaintiff also brings claims under 42 U.S.C. § 1983 against Defendant John Seay ("Seay"), Sheriff of Cherokee County, and against Defendant Cherokee County for violating several of his constitutional rights. (Hereinafter, the Court will refer to Seay and Cherokee County collectively as "Defendants"). Seay and Cherokee County (but not Jeans) now move the Court to grant them summary judgment.

## DISCUSSION

### I. *Plaintiff's Motion to Extend Time.*

Defendants filed their Motion to Dismiss on June 18, 1993. Plaintiff moved the Court, on August 12, 1993, to extend until August 20, 1993, the time within which he could respond to Defendants' motion. Plaintiff then filed his response on August 23, 1993. The Court grants Plaintiff's Motion to Extend Time and will consider Plaintiff's response despite his failure to file it by the extended due date.

### II. *Defendants' Motion for Summary Judgment.*

### A. *Standard of Review for Summary Judgment Motions.*

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases such as this where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).[1] The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not enough in most situations for the movant merely to point out to the court this absence of evidence. *Id.* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing

---

1. In contrast, where the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to *every* element essential to his or her claim. *See Id.*

the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)).

Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. *Id.; Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Clark,* 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

### B. *Application.*

Plaintiff pled the following in his Complaint:

Acting under color of law, Defendants SEAY and CHEROKEE COUNTY negligently failed to instruct, supervise, control and discipline on a continuing basis Defendant JEANS in his duties to refrain from:

(a) Unlawfully and maliciously harassing a citizen who is acting in accordance with his constitutional and statutory rights, privileges, and immunities.

(b) Unlawfully and maliciously arresting and imprisoning a citizen who is acting in accordance with his constitutional and statutory rights, privileges, and immunities.

(c) Unlawfully and maliciously assaulting and beating a citizen or otherwise using unreasonable and excessive force before, during or after the making of an arrest, whether the arrest was lawful or unlawful; and

(d) Otherwise depriving Plaintiff of his constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

Complaint, ¶ 29[1].

### 1. *Applicable Law.*

 A local governmental entity may not be held liable for an employee's tortious acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." *Collins v. City of Harker Heights,* — U.S. —, —, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). In other words, respondeat superior may not serve as the basis for imposing section 1983 liability on such an entity. *Collins,* — U.S. at —, 112 S.Ct. at 1067; *City of Canton v. Harris,* 489 U.S. 378, 392, 109 S.Ct. 1197, 1206–07, 103 L.Ed.2d 412 (1989); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Respondeat superior also may not serve as the basis for imposing section 1983 liability on supervisory personnel for the acts of their subordinates. *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir. 1990).[2]

---

**2.** In the case now before the Court, Cherokee County is a local governmental entity and Seay is a supervisor. For the sake of simplicity, the

Court will refer to both as "the government" and, when discussing the general state of the law, will use the term "government" to encom-

■ Instead, governmental liability attaches only when "execution of a government's policy or custom [3], whether made by its law makers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). "Thus, not only must there be some degree of 'fault' on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 820, 105 S.Ct. 2427, 2434–35, 85 L.Ed.2d 791 (1985)). *See also Vineyard v. County of Murray, Georgia,* 990 F.2d 1207, 1211 (11th Cir.1993) ("To attribute liability to a municipality under § 1983, the plaintiff must demonstrate that the municipality had an official policy that was 'the moving force of the constitutional violation.'" [citation omitted] ).

■ The parties to this suit contend that there are two generally accepted methods of proving, in an excessive force suit, that a government's policy or custom caused a plaintiff's injury. The first is by showing that the government's failure to train its officers amounts to a deliberate indifference to the rights of persons with whom the officers come into contact. *Canton,* 489 U.S. at 388–89, 109 S.Ct. at 1204–05 ("This rule is most consistent with our admonition in *Monell* [citation omitted], and *Polk County v. Dodson* [454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509] [ (1981) ] [citation omitted], that a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"). *See also Greason,* 891 F.2d at 837 (applying the deliberate indifference standard to questions of supervisory liability).

The second method of making such a proof is by showing that a government has shown a "persistent failure to take disciplinary action against officers." *Fundiller,* 777 F.2d at 1443 ("[A] persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell.*") *See also Kopf v. Wing,* 942 F.2d 265, 269 (4th Cir.1991) (stating the standard as the "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example."), *cert. denied sub nom Prince George's County v. Kopf,* —— U.S. ——, 112 S.Ct. 1179, 117 L.Ed.2d 423 (1992); *McConney v. Houston,* 863 F.2d 1180, 1184 (5th Cir.1989) ("[A] persistent, widespread practice of city officials or employees that [is] common and well settled."); *Fundiller,* 777 F.2d 1436, 1443 (finding that supervisory liability arises where "a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action.").

In *McConney,* the Fifth Circuit also explained that "[i]solated incidents ... are inadequate to prove knowledge and acquiescence by policymakers." 863 F.2d at 1184. The alleged custom at issue in that case was the post-arrest detention of persons charged with public intoxication. *Id.* The City of Houston apparently admitted that those charged with public intoxication were detained following their arrest, but argued that such detentions were not unconstitutional. *Id.* The practice at issue in *McConney* was, thus, admittedly widespread and well settled.

pass both local governmental entities and local governmental supervisors. *See Greason,* 891 F.2d at 837 (finding that the standard employed for determining governmental liability applies also to supervisory liability).

3. The term "custom" includes "persistent and wide-spread ... practices," "permanent and well settled" practices, and "deeply embedded traditional ways of carrying out policy." *Adickes,* 398 U.S. at 167–68, 90 S.Ct. at 1313–14. A govern-

ment need not formally adopt a custom for the custom to take on the force of law. It may take on such force by virtue of being sufficiently settled and permanent. *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36). "To have this effect, the custom must be 'created' by those whose 'edicts or acts may fairly be said to represent official policy.'" *Id.* (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38).

2. *Defendants' Burden.*

In meeting their initial burden, Defendants show the Court that Plaintiff plead only that Defendants negligently trained Jeans and not that they had a custom or policy of doing so (and certainly not that they had a custom of failing to put a stop to a widespread pattern of unconstitutional conduct by other officers). Defendants also direct the Court's attention to evidence in the record that Jeans received all of the required training under state law, is certified as a law enforcement officer, and has engaged in continuing education since his initial date of certification in 1989. Deposition of John Jeans, pp. 20–22. Defendants' evidence shows that Jeans' instruction included "thorough[ ] train[ing] in the necessary and proper means of effectuating an arrest, including, but not limited to, instruction on the allowable and proper use of force in effectuating an arrest." Affidavit of John Seay (appended to Defendants' Motion), ¶ 3. Furthermore, Seay has testified that "[i]t is the policy of Cherokee County that any law enforcement officer is to only arrest individuals when they have probable cause to believe that a crime is being committed and only authorized to use that amount of force necessary to effectuate that arrest and maintain his or her own safety." *Id.* at ¶ 5. The Court finds that Defendants have met their initial burden of showing that there is an absence of evidence to support Plaintiff's case against them. The burden thus shifts to Plaintiff to direct the Court's attention to evidence in the record which demonstrates that there is a genuine issue of material fact.

3. *Plaintiff's Burden.*

Plaintiff argues that Defendants are liable under both theories of governmental liability discussed above. Leaving aside the question of whether Plaintiff's Complaint meets the requirements of Federal Rule of Civil Procedure 8(a) (*see Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993) (holding that "federal courts may not apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of [Rule 8(a) ]—in civil rights cases alleging mu-

nicipal liability under § 1983.")), the Court finds that Plaintiff's Complaint does not give any indication that he is alleging liability under the second theory described above. Plaintiff alleges in count three of his Complaint only that Defendants failed to instruct, supervise, control, and discipline Jeans. Plaintiff does not allege that Defendants ever failed to discipline other officers, or that Defendants had any custom of failing to discipline officers. The Court, therefore, will treat Defendants' proffer in support of their motion as satisfying fully their initial burden on each of Plaintiff's plead theories of liability. However, in an abundance of caution, the Court will also consider Plaintiff's responsive arguments on the second theory of liability.

As a preliminary matter, the Court notes that Plaintiff, in support of his argument, directs the Court's attention to his Statement of Facts in Support of his Opposition to Defendants' Motion [19], which contains cites to evidence in the record. Plaintiff does not, however, provide in his argument cites to the evidence which allegedly supports each of his factual contentions. Although this unnecessarily forces the Court to search through Plaintiff's Statement of Facts to find support for contentions put forth in Plaintiff's Argument, the Court will undertake this task.

(a) *Failure to Train.*

Plaintiff contends that he can demonstrate the existence of a genuine issue as to whether Defendants have a custom or policy of inadequately training law enforcement officers. Plaintiff directs the Court's attention to evidence in the record which shows that Jeans had worked as a "road deputy" for only three months prior to arresting and allegedly assaulting Plaintiff (Jeans Deposition, pp. 6, 13) and had worked in non-law-enforcement related professions prior to joining the Cherokee County Sheriff's Department. *Id.* at pp. 11–14. Plaintiff also alerts the Court to the fact that Jeans was unfamiliar with the exact reading of the Department's policy on inventory searches. *Id.* at 62.

Plaintiff alleges that Jeans was unable to define when an officer may make a warrant-

less arrest, but he fails to cite any evidence to support this allegation. In his summation, Plaintiff argues that a policy which directs officers to simply "follow the law," and which fails to train adequately its deputies as to the limits of the use of force, amounts to deliberate indifference. There is no evidence, however, that Defendants' training policy consisted only of the directive to "follow the law." In addition, Plaintiff's contention that Defendants failed to adequately train its deputies as to the constitutional limits of the use of force is merely a conclusory statement and must be supported with evidence in order to support plaintiff in meeting his burden.

The Court finds that Plaintiff has failed to direct the Court's attention to any evidence suggesting the existence of a genuine issue as to the adequacy of Defendants' training methods. Plaintiff shows that Jeans received only Defendants' standard training and continuing education, but fails even to suggest how that training might have been insufficient or lacking. If a plaintiff could survive a summary judgment motion by merely stating the truism that the only training a municipal employee received was the training he received, courts could never grant summary judgment to a municipality on a failure to train claim. Plaintiff also asks the Court to adopt his suggestion that Defendants were wrong to place Jeans on road patrol because of Jeans' lack of experience on road patrol. Adopting this suggestion would be akin to holding governments strictly liable for their officer's actions in the first few months of those officer's employment, for no reason other than the fact that it is the first few months of their employment. Without some explanation as to why strict liability should apply in such an inevitable situation, the Court rejects Plaintiff's suggestion.

As for Plaintiff's proffer of evidence showing that Jeans was unfamiliar with the exact reading of the Department's policy on inventory searches, inventory searches are not at issue here, and Plaintiff does not claim anywhere in his Complaint that he was injured as a result of Defendants' failure to train Jeans in the execution of an inventory search. Moreover, even if Defendants' policy on inventory searches was at issue in this

case, Jeans' failure to remember portions of that policy, in a deposition taken more than two years after the incident in question, has no probative value.

(b) *Failure to Stop a Widespread Pattern of Unconstitutional Behavior.*

Plaintiff has not offered any evidence that incidents of police brutality in Cherokee County were widespread or well settled or anything more than isolated. Plaintiff also fails to offer any evidence that Defendants persistently or irresponsibly failed to take steps to stop such incidents. At most, Plaintiff has provided evidence suggesting that Defendants *may* have failed to discipline officers on one occasion, and that police brutality *may* have occurred on a few occasions.

The following is a catalogue of all of Plaintiff's evidence of a persistent widespread practice to which Defendants allegedly failed to put a stop:

(1) Seay hired a person by the name of Robbie Bishop whom he knew, or should have known, had been sued, while employed by a different county as a law enforcement officer, for excessive use of force. Seay Deposition, p. 12–13. *See generally Vineyard*, 990 F.2d 1207 (11th Cir.1993) (the resulting section 1983 suit against Bishop). It is clear that Bishop committed his tort before coming under Seay's employ.

(2) During Seay's tenure as Sheriff of Cherokee County, deputies arrested a newspaper photographer and confiscated his film while he was taking photographs of an escaped prisoner's arrest. The reporter was charged with obstruction and "using fighting words," but was acquitted. Seay Deposition at pp. 15–18. Seay's uncontradicted testimony is that he had nothing to do with the arrest and gave no orders to confiscate the film. *Id.* There is no evidence in the record before this Court that any charges were filed against any officers, nor is there any evidence that the photographer's film was replaced with an exposed roll of film, despite Plaintiff's suggestion otherwise. Finally, there is no evidence that Defendants failed to discipline those officers who engaged in any wrongful behavior associated with the incident.

(3) In 1990, two Cherokee County Sheriff's deputies, wearing masks, kidnapped two youths, drove them around in a van, and later released them without filing any charges against them. Seay terminated one of the deputies, though he believes he did so because of that deputy's involvement in a separate, unrelated incident. Seay also suspended the other deputy and forwarded the complaint against him to the Peace Officers' Standards and Training office ("P.O.S.T."). P.O.S.T. did not discipline the deputy immediately, and both deputies remained under Seay's employ for at least one or two years after the incident. *Id.* at pp. 20–21, 26, 35.

(4) Seay has been sued several times in his official capacity as Sheriff, at least once for excessive use of force. *Id.* at 27. There is no testimony in the record before this Court as to the merit of these suits or their eventual outcome. There is also no evidence as to the existence or absence of any disciplinary action.

(5) The American Civil Liberties Union filed a lawsuit protesting the conditions in Cherokee County prisons. Many of the claims involved the condition of the prisons' law libraries, meal rooms, and "lawyer's rooms." The complaint also contained a claim that inmates had been "hog-tied." *Id.* at 28–30. Plaintiff, however, fails to point to any evidence in the record that a court found such "hog-tyings" to have actually occurred. Furthermore, there is no evidence as to the existence or absence of any disciplinary action.

(6) Two inmates escaped from the Cherokee County jail, and Cobb County officials apprehended them before Cherokee County officials realized they were missing. *Id.* at p. 37. There is no evidence as to the existence or absence of any resulting disciplinary actions.

(7) Plaintiff's counsel asked Seay at his deposition if he had a high turn-over rate in his department. Seay did not answer directly, but stated that he had dismissed, for cause, employees whom he felt could not serve the public. *Id.* at p. 37. There is no evidence to suggest any improper behavior was involved.

(8) Seay was found in contempt of court for improperly contacting a grand jury foreman during an investigation of the Sheriff's Department. *Id.* at p. 42. There is no evidence as to the existence or absence of disciplinary action.

Plaintiff's evidence clearly does not rise to the level of showing that Defendants persistently or irresponsibly failed to take disciplinary actions against officers who violated others' rights. Many of Plaintiff's proffers involve nothing more than recitations of accusations made by Plaintiff's counsel at Seay's deposition, to which Seay gave noncommittal answers. Without affirmation by Seay, and without any other evidence, those accusations are nothing more than allegations, and allegations alone cannot defeat a motion for summary judgment.

Even if all of the accusations were true, there is no evidence in the record, with one exception, that Defendants may have failed to discipline the officers who were involved in the various incidents. That exception is the incident in which the two deputies kidnapped the two youths. The deputies were able to remain in the department following the incident, raising the question of whether the disciplinary actions were adequate. However, the unrefuted evidence shows that one was disciplined for this incident, and the other was terminated, albeit for a separate incident.

After analyzing Plaintiff's proffer for evidence of a failure to discipline, the Court must find that the one or two incidents for which such evidence exists, over the course of Seay's four-year tenure as Sheriff of Cherokee County, do not come close to suggesting a persistent or irresponsible practice of failing to discipline officers who violate others' rights. Plaintiff has offered evidence of nothing more than isolated incidents, many in the form of accusations only, and most without any mention of Defendants' disciplinary responses. The Court, therefore, grants Defendants' Motion for Summary Judgment. Accordingly, the Court denies as moot Defendants' Request for Oral Argument.

## CONCLUSION

The Court GRANTS Defendants John Seay and Cherokee County's Motion for Summary Judgment [11], GRANTS Plaintiff's Motion to Extend Time to Answer Defendants' Motion for Summary Judgment [17] and DENIES AS MOOT Defendants John Seay and Cherokee County's Request for Oral Argument [21]. The only matter remaining before this Court is Plaintiff's claims against Defendant John Jeans.

So ORDERED.