**Gloria BATTLE Plaintiff,**

**v.**

**CITY OF FLORALA, et al., Defendants.**

**No. CIV. A. 97–D–1612–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 6, 1998.

Allen G. Woodard, Andalusia, AL, for Plaintiff.

Norman Gunter Guy, Jr., Montgomery, Al, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are two dispositive motions filed by the Defendants in which Defendants argue, inter alia, that the Plaintiff's claims arising under 42 U.S.C. § 1983 should be dismissed.

First, Defendants filed a Motion to Dismiss and Brief in Support of their Motion on November 10, 1997. Plaintiff filed a brief in Opposition to Defendants' Motion to Dismiss, which the court construes as a Response ("Response"), on December 30, 1997. On July 7, 1998, the court entered an order directing Plaintiff to clarify her contentions. Therefore, on July 16, 1998, Plaintiff filed a Submission pursuant to the court's July 16, 1998 Order, which the court construes as a Response ("Response 2"). On July 23, 1998, Defendant filed a Response to Plaintiff's submission, which the court construes as a Reply.[1]

Second, Defendants filed a Motion for Summary Judgment and a Brief in Support of their Motion on May 13, 1998. On June 3, 1998, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment, which the court construes as a Response ("Response 3").

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that

---

1. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the court construes Defendants' Motion to Dismiss as a Motion for Summary Judgment because Plaintiff attached deposition testimony to her Supplemental Response and the court opts to consider the external evidence pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Therefore, the court has combined the Motions for Summary Judgment and will dispose of both of them in the instant order.

Defendants Motions for Summary Judgment are due to be granted in part.[2]

## I. JURISDICTION

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367. The Parties do not contest personal jurisdiction or venue.

## II. FACTUAL BACKGROUND [3]

Plaintiff filed an eight count Complaint on October 1, 1997 in the Circuit Court of Covington County, Alabama. (Pl.'s Compl. at 1.) In her Complaint, Plaintiff alleges that Defendants committed a variety of state law torts, including negligence, wantonness, assault & battery, false arrest, false imprisonment, malicious prosecution, and abuse of process. (Id. at 1–5.) Plaintiff also alleges that she is entitled to recovery under 42 U.S.C. § 1983 against Defendants because they allegedly deprived her of her Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Id. at 5–6.) Pursuant to 28 U.S.C. § 1441(a), Defendants removed the action to this court on November 5, 1997.

Plaintiff alleges the following specific facts to support her claims. Early in the morning of June 23, 1996, Plaintiff drove home from an evening at the "KP Hall," a local club in Florala. (Pl.'s Resp. 3 at 1; Pl.'s Test. at 259.) Defendant Inabinett was on duty as a police officer for the Defendant City of Florala. (Pl.'s Resp. 3 at 1; Def.'s Test. at 6–7.) Plaintiff claims that after she had driven a couple of blocks from the club, she noticed Officer Inabinett's blue lights in her rear view mirror. (Pl.'s Test. at 261.) She believed that the Defendant was chasing a group of young boys who were allegedly standing adjacent to the road upon which she was traveling.[4] (Id.; Franklin's Test. at 325.) Plaintiff drove her car around an "S-shaped" curve in the road and Defendant "rear-ended" her car with his police car.[5] (Pl.'s Test. at 324; Hobbs' Test. at 220.)

After the accident, Defendant Inabinett put Plaintiff on the ground and handcuffed her. (Def.'s Test. at 22.) Plaintiff and another witness claim that Defendant Inabinett put his knee on the back of her neck for at least ten minutes. (Pl.'s Resp. 3 at 3; Wallace Test. at 233; Franklin Test. at 368.) Plaintiff claims that she had trouble breathing. (Pl.'s Test. at 268.) An ambulance was called, and Plaintiff was taken to the hospital. (Pl.'s Resp. 3 at 3; Wallace Test. at 233.)

Plaintiff was ultimately arrested after being released from the hospital. (Pl.'s Resp. 3 at 2; Def.s' Ex. F.) She was charged with running a stop sign, eluding police, driving while suspended, and reckless driving. (Def.s' Ex. F.) Additionally, she was charged with DUI by Alabama State Trooper Todd

---

2. The court did not address the remaining portions of Defendants Motions as these arguments applied to Plaintiff's state law claims and the court has chosen to remand the remaining claims to state court pursuant to 28 U.S.C. § 1367(c)(3).

3. Defendants dispute many of the factual allegations made by the Plaintiff. The following summary construes the facts in the light most favorable to the Plaintiff, the non-moving party, as the court must do when considering Defendants' Motions for Summary Judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

4. Defendants' version of the events of that night are in sharp contrast to the Plaintiff's version. Defendant Inabinett testified that he observed the Plaintiff run a stop sign within the police jurisdiction of the City of Florala, and he proceeded to follow her vehicle. He observed her run another stop sign, at which time he turned on his emergency blue lights. Instead of stopping,

Plaintiff accelerated, and a high speed chase ensued that ultimately resulted in him crashing into the rear of her car. (Def.s' Br. at 1.)

5. Defendant Inabinett claims that the Plaintiff applied her brakes sharply to avoid hitting a small animal in the road, and although he also applied his brakes, he could not avoid hitting Plaintiff in the rear of her vehicle. Plaintiff apparently contests this version of events but has not made her version of the facts clear to the court. See Pl.'s Resp. at n. 2.

Furthermore, the court ordered the Plaintiff to resubmit her brief on July 7, 1998 and to specifically allege what facts support her contention that her rights were violated, but the court finds that the Plaintiff's resubmission is still lacking in clarity on many issues. Plaintiff's has disputed Defendants' version of the facts, but has not properly summarized to the court her own version of the facts. However, the court has been diligent in reading through the submitted depositions in an effort to ascertain Plaintiff's version of the events.

Grimes. (Def.s' Ex. B and F.) On October 10, 1996, Plaintiff appeared before the Honorable Frank L. McGuire, III, District Court Judge of Covington, County Alabama, and after a trial, she was convicted of all charges. (Def.'s Ex. E.)

Plaintiff claims that Defendant Inabinett manufactured a case against her to cover up his own incompetence and negligence. (Pl.'s Resp. 3 at 1.) She claims that on the night in question, Defendant Inabinett and another officer were patrolling the area around the KP Hall and arrested a young man. (Pl.'s Resp. 3 at 2; Def. Inabinett's Test. at 40.) Defendant Inabinett admitted that "[w]e had one to get away from us that night," and Plaintiff theorizes that Defendant Inabinett was chasing the boys and looking for the one that got away when the accident occurred. (Pl.'s Resp. 3 at 2; Def. Inabinett's Test. at 40.) Plaintiff seeks compensatory and punitive damages, plus costs and attorneys fees in light of Defendants' alleged conduct.

## III. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## IV. DISCUSSION

### Section 1983 Claims: Illegal Arrest

Section 1983 of Title 42 of the United States Code creates a private right of action

for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. 42 U.S.C. § 1983. In Count VIII of her complaint, Plaintiff alleges that she is entitled to recovery under 42 U.S.C. § 1983 against Defendant Inabinett in his individual capacity because he allegedly deprived her of her constitutional rights. Specifically, Plaintiff alleges that he violated the tenets of the Fourth and Fourteenth Amendments by using excessive force, illegally seizing her and illegally arresting her.[6]

■ With regard to Plaintiff's claims of illegal arrest, this court finds that it lacks jurisdiction to consider this claim. Under the *Rooker–Feldman* doctrine, a federal court "may not exercise jurisdiction to decide federal issues which are inextricably intertwined with a state court's judgment." *Dale v. Moore,* 121 F.3d 624, 626 (11th Cir.1997). "The essence of the *Rooker–Feldman* doctrine is that 'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" *Narey v. Dean,* 32 F.3d 1521, 1524 (11th Cir. 1994) (quoting *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).

> A district court engages in impermissible appellate review when it entertains a claim that the litigants did not argue in the state court, but is inextricably intertwined with the state court judgment. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. The *Rooker–Feldman* doctrine applies as long as the party had a reasonable opportunity to raise his federal claims in the state court proceedings. *Wood v. Orange County,* 715 F.2d 1543, 1547 (11th Cir.1983).

*Dale,* 121 F.3d at 626.

> A federal suit is so intertwined with the earlier state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues be-

fore it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

*Datz v. Kilgore,* 51 F.3d 252 (11th Cir.1995). The *Rooker–Feldman* doctrine also applies to bar federal review of state court convictions. *See Jones v. Crosby,* 137 F.3d 1279 (11th Cir.1998) (holding that a defendant cannot utilize 42 U.S.C. § 1983 to recast his claim and thereby obtain collateral review in federal court of the state court decision denying his application for a stay); *Datz v. Kilgore,* 51 F.3d 252 (11th Cir.1995).

The court finds the Eleventh Circuit decision of *Datz* to be particularly instructive to the instant case. In *Datz,* the Plaintiff was arrested and convicted for being a felon in possession of a firearm. 51 F.3d at 252. During the Plaintiff's trial in state court, he moved to suppress evidence of a rifle, arguing that the search conducted by the police of his car, in which the rifle was found, violated the Fourth Amendment. *Id.* The state court denied the motion and Plaintiff was convicted. *Id.* Plaintiff filed a civil suit in federal district court under 42 U.S.C. § 1983 and claimed that the search of his car violated his Fourth Amendment rights. *Id.* The district court dismissed the federal case and found that the *Rooker–Feldman* doctrine barred Plaintiff's claim. *Id.* The Eleventh Circuit affirmed and stated:

> The state court upheld the constitutionality of the pertinent search; so plaintiff Datz cannot have success on the merits of his section 1983 claim unless the state court was wrong in its conclusion that the search was lawful .... Because the state court did squarely adjudicate the issue of the lawfulness of the search, Datz' section 1983 suit is nothing but a "prohibited appeal of the state-court judgment."

*Id.* at 253.

■ In the instant case, Plaintiff has argued that the question before this court is whether a reasonable police officer under the circumstances could have believed he had probable cause to make an arrest. (Pl.'s

quested the court to dismiss those claims, stating that "Plaintiff has not properly raised" those claims. The court agrees and finds that such dismissal is proper.

Resp. 2 at 5.) However, for this court to decide these issues, it would have to re-litigate the issues already litigated and decided by the state court. The state court convicted the Plaintiff of running a stop sign, eluding police, driving while suspended, reckless driving, and DUI. (Def.'s Ex. E.) In order for the state court to so convict, it had to find that the officer had probable cause to make the arrest. *See e.g. Lindsey v. Storey*, 936 F.2d 554, 562 (11th Cir.1991) (citations omitted) (stating that "warrantless arrest without probable cause violates the Constitution").

Furthermore, in support of this court's finding that the issues are exactly the same as those previously adjudicated in state court, the court notes that Plaintiff has submitted the actual trial testimony given before Judge Jerry E. Stokes, Circuit Judge of the 22nd Judicial Circuit of Alabama. (Pl.'s Ex. A.) Plaintiff testified before Judge Stokes that she did not actually run a stop sign. (Pl.'s Test. at 269). Her witnesses also supported her theory that Defendant Inabinett was actually after a group of boys rather than Plaintiff when he hit the rear of her automobile. (Franklin's Test. at 320; Wallace's Test. at 231.) However, despite Plaintiff's testimony and that of the witnesses, Plaintiff was still convicted of all charges. (Def.'s Ex. E.)

Thus, the court finds that the Plaintiff's illegal arrest claim is "inextricably intertwined" with the state court conviction and is therefore barred by the *Rooker–Feldman* doctrine. Accordingly, the court finds that this claim is due to be dismissed.

### Illegal Seizure Claim Against Officer Inabinett in His Individual Capacity

Plaintiff contends that Defendant Inabinett's rear end collision of her vehicle amounts to excessive force. In support of her argument, she cites *Adams v. St. Lucie County Sheriff's Dep't*, 962 F.2d 1563 (11th Cir.1992), for the proposition that the "law [is] clearly established 'that a Law Enforcement Officer's action of intentionally ramming an automobile during a high-speed

chase, causing it to crash, and thereby terminating the freedom of movement of a passenger in the car constituted an unreasonable seizure which would have been apparent to a reasonable Officer operating under similar circumstances.'" (Pl.'s Resp. 2 at 3) (citing *Adams*, 962 F.2d at 1572).

■ The court finds the *Adams* case unpersuasive [7] and inapplicable to the present facts. At the outset, the court notes that the Officer in *Adams* intentionally rammed his car into the rear of the plaintiff's car. However, in the present case, the court notes that the Plaintiff does not contend in any of her pleadings that the collision was created intentionally by Defendant Inabinett. According to the Plaintiff, Defendant Inabinett's act was one of negligence and wantonness that occurred while Defendant Inabinett was chasing other suspects. (Pl's Resp. 3 at 8.) By the accounts of all Parties and witnesses in this case, this collision was nothing but an unfortunate traffic accident and, thus, the court finds that the arrest of Plaintiff was not actually a seizure within the meaning of the Fourth Amendment.

In *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), the Supreme Court explained that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control" and that "the detention or taking itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." *Id.* at 596, 109 S.Ct. 1378. By way of an illustration, the Court stated that "if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment." *Id.* The court finds that under the facts as the Plaintiff has alleged them, the instant case is like the parked car that accidentally strikes a passerby. Because the Plaintiff has neither pleaded nor offered any evidence to prove that Defendant Inabinett's ramming was intentional, nor, according to the Plaintiff, was the action taken in an attempt to apprehend

---

7. The court notes that the opinion cited by the Plaintiff has been vacated by the Eleventh Circuit in a subsequent opinion, *Adams v. St. Lucie*

*County Sheriff's Dep't.*, 998 F.2d 923 (11th Cir. 1993).

her,[8] the Court finds that the accident does not amount to a seizure and, thus, does not implicate the Fourth Amendment. *See Estate of Story v. McDuffie County, Ga.*, 929 F.Supp. 1523 (S.D.Ga.1996) (finding no seizure because the Plaintiffs did not present any evidence to support their claim that the Officer intentionally forced them off the road); *Galas v. McKee*, 801 F.2d 200 (6th Cir.1986) (holding police officer engaged in a high speed pursuit of a traffic offender had not seized the offender).

### Excessive Force Claim Against Officer Inabinett in his Individual Capacity

Plaintiff also claims that when Defendant Inabinett arrested her, he used excessive force in violation of the Fourth and Fourteenth Amendments. She specifically argues that Defendant Inabinett "rammed in the back of my car," he "put me down in the road and ... he handcuffed me," and "it just knocked me kind of senseless and I started getting shortness of breath." (Pl.'s Test. at 267–268.) Plaintiff also claims that Defendant Inabinett put his knee in her back for about ten minutes. *(Id.)* Defendant Inabinett contends that this claim is barred by the doctrine of qualified immunity.

Before the court addresses Defendant Inabinett's assertion of qualified immunity, it must first decide whether Plaintiff has alleged a violation of a constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (stating that "a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted [and thus whether defendant is entitled to a qualified immunity analysis] is the determination of whether the plaintiff has asserted a violation of a constitutional right at all"). Thus, in applying the *Seigert* analysis, the court must determine whether Plaintiff's allegations establish a claim of excessive force in violation of the Fourth Amendment.

When a Plaintiff is actually "seized" within the context of the Fourth Amendment, his claim of excessive force must be reviewed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The subjective intent of the officers is irrelevant in this equation. *Courson v. McMillian*, 939 F.2d 1479 (11th Cir.1991). "The test is whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred .... Thus, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1487 (quoting *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

 Whether a specific use of force is objectively reasonable turns on several factors, including the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. *See Graham*, 490 U.S. at 394, 109 S.Ct. 1865; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.1993). Another key factor in the Eleventh Circuit is the extent of the injury inflicted. *See Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986) (citations omitted); *Raby v. Baptist Medical Center*, 21 F.Supp.2d 1341, 1349 (M.D.Ala. 1998); *Griffin v. City of Clanton*, 932 F.Supp. 1359, 1368 (M.D.Ala.1996). Use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.)). Because the excessive force standard establishes no bright line, qualified immunity applies unless every reasonable officer in the Defendant's position would conclude the force was unlawful. *Post*, 7 F.3d at 1559.

 Under the facts of the instant case, the court finds that Defendant Inabinett did not use excessive force. Plaintiff admitted

---

8. Under the Plaintiff's version of facts, Defendant Inabinett was not even pursuing her, but instead, was after a group of boys. Thus, according to the Plaintiff's set of facts, Defendant Inabinett had was not conducting a high speed chase in pursuit of a misdemeanor traffic violator.

that when she saw Defendant Inabinett's blue lights in her rear view mirror, she thought the lights were for a group of young boys and not for her. (Pl.'s Test. at 261). Thus, even viewing the facts in a light most favorable to the Plaintiff, she did not immediately stop when Defendant Inabinett signalled her to do so. The court finds that it was reasonable for the officer to infer that she was attempting to evade arrest and, thus, Defendant Inabinett's act of putting her on the ground and handcuffing her also was reasonable in light of the circumstances. *See Moore v. Gwinnett County,* 967 F.2d 1495, 1499 (11th Cir.1992) (holding that the "act of physically holding back a misdemeanor suspect who is attempting to leave the scene, even given her pregnant condition, cannot be considered disproportionate as measured by this circuit's precedents"); *Courson v. McMillian,* 939 F.2d 1479, 1493 (11th Cir. 1991) (holding that officer did not use excessive force in requiring passenger to lie on ground while he directed shotgun toward her and her companions). Additionally, the court finds that it was reasonable for Defendant Inabinett to keep her on the ground for ten minutes. Plaintiff admits that several of her neighbors and relatives approached the accident scene. Defendant Inabinett claims he felt threatened by the individuals because they were running up in an aggressive mode, yelling and hollering. (Def.'s Test. at 173.) The court finds that under the instant circumstances, Defendant Inabinett did not exercise excessive force.

Furthermore, the court is unable to find any evidence of injury to support Plaintiff's claim of excessive force. Plaintiff argues that Defendant Inabinett put her on the ground, handcuffed her, and put his knee in her neck for ten minutes. However, even though Plaintiff was taken to the hospital by ambulance, she was released from the hospital later the same day and is unable to produce any evidence of bruising, scrapes, or cuts to support her claim of excessive force. *See Gold v. Miami,* 121 F.3d 1442, 1446 (11th Cir.1997) (holding that officer did not use excessive force even though plaintiff experienced pain and minor skin abrasions from handcuffs that were applied tightly for twenty minutes); *Griffin v.. City of Clanton,* 932

F.Supp. 1359, 1368 (M.D.Ala.1996) (finding no excessive force because Plaintiff did not claim that any physical injury resulted and did not present any other evidence to indicate the severity of the force used against him). The only injury that she claims is difficulty in breathing. However, the court finds that shortness of breath, standing alone, is not enough to establish a genuine issue of material fact concerning excessive force. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1492 (11th Cir.1996) (holding that officers who put decedent in handcuffs and leg restraints and placed him in a police car with his head between the front and rear seats in such a manner that decedent was unable to adequately breath did not use excessive force under the circumstances).

Based on the circumstances and lack of evidence to establish injury to the Plaintiff, the court finds that Defendant Inabinett did not use excessive force. Thus, he is entitled to summary judgment in his favor on Plaintiff's excessive force claim against him in his individual capacity.

### Section 1983 Claim Against the City of Florala and Defendant Inabinett in His Official Capacity

Defendants urge this court to dismiss the claims against the Defendants because the "City of Florala and Officer Walter Inabinett in his official capacity may not be held liable under 42 U.S.C. § 1983 based on a theory of *repondeat superior or vicarious liability* and the Plaintiff has failed to properly allege a cause of action against both of these Defendants as a matter of law." (Def.'s Mot. at 2.) (emphasis in original).

 At the outset, the court notes that Plaintiff's complaint against both the City of Florala and Defendant Inabinett in his official capacity is redundant. When an officer is sued under Section 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931

F.2d 764, 776 (11th Cir.1991). Thus, the court hereby dismisses Plaintiff's claim against Defendant Inabinett in his official capacity, as Plaintiff has effectively brought a claim against the City of Florala. *See Busby,* 931 F.2d at 776 (affirming district court's dismissal of the Plaintiff's claims against the Defendants in their official capacity because to keep both the City and the officers would have been redundant and possibly confusing to the jury).

▉ Furthermore, the court agrees with the Defendants that the Plaintiff cannot rely on a respondeat superior theory to hold a municipality liable for the actions of its officers. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 817–818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (stating that although, local bodies such as counties and municipalities are persons within the meaning of Section 1983 and can be liable for deprivations of federally protected rights, it is not a respondeat superior theory on which liability rests). "A municipality cannot be held liable solely because it employs a tortfeasor." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. Instead, in order to recover against a municipality, the Plaintiff must establish that the alleged conduct occurred pursuant to a custom or policy of the municipality. *Id.* at 694, 98 S.Ct. 2018.

> Local governments are directly liable under § 1983 . . . for constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law.

*Martinez v. City of Opa–Locka, Fla.,* 971 F.2d 708, 713 (11th Cir.1992) (citations omitted). In other words, to hold the governmental entity liable for the alleged constitutional deprivations by its employees, Plaintiff must establish that an official policy or custom of the governmental entity was the moving force behind the deprivations. *Id.,* (citing *Farred v. Hicks,* 915 F.2d 1530, 1532–33 (11th Cir.1990)).

There are two generally accepted methods of proving, in an excessive force suit, that a government's policy or custom caused a Plaintiff's injury. The first is by showing that the government's failure to train its officers amounts to a deliberate indifference to the rights of persons with whom the officers come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The second method of holding a governmental entity liable is by showing that a government has demonstrated a "persistent failure to take disciplinary action against officers." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir. 1985) (stating that a "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell* "); *see also McConney v. Houston,* 863 F.2d 1180, 1184 (5th Cir.1989). In *McConney,* the Fifth Circuit also explained that "[i]solated incidents . . . are inadequate to prove knowledge and acquiescence by policymakers." 863 F.2d at 1184 (cited with approval in *Loggins v. Jeans,* 841 F.Supp. 1174, 1177 (N.D.Ga. 1993)).

In her Response, Plaintiff admitted that Defendants cannot be held liable for the act of employees solely on the basis of respondeat superior. However, Plaintiff requests the court to issue a "Declaratory Judgment that the acts, policies and practices of Defendant Inabinett and the City of Florala violated her rights." (Pl.'s Resp. 2 at 6.) Specifically, Plaintiff points to Defendant Inabinett's testimony that the "excessive force he used on Ms. Battle in taking her to the ground and handcuffing her was done as part of his training as a City of Florala Police Officer." (Pl.'s Resp. 2 at 6; Def. Inabinett's Test. at 21–22.)

▉ The court finds that Plaintiff has failed to prove under either of the established methods that policy or custom of the City of Florala caused her injuries. First, the court finds that Plaintiff has not alleged that Defendant is liable under the second theory. In fact, the only argument that Plaintiff has made consistent with either methods is the statement that "Officer Inabinett . . . testif[ied] that the excessive force he used on Ms. Battle in taking her to the ground and handcuffing her was done as part

of his training as a City of Florala Police Officer." (Pl.'s Resp. 2 at 6.)

Second, the court finds that this statement is not sufficient to establish liability under the "failure to train" method. After reading Defendant Inabinett's entire testimony, the court finds that Plaintiff has misconstrued that portion of the transcript. The court finds that Defendant Inabinett testified that the use of handcuffs were part of his normal procedure and his formal training. Defendant Inabinett did not testify that any alleged "excessive force" that he used was part of his formal training or normal procedure. Furthermore, the court finds that Plaintiff has failed to supply any evidence, i.e. training manuals or testimony from any other official, that any custom, policy, or practice of the City of Florala was the moving force behind the Plaintiff's alleged constitutional rights violation. Thus, in accordance with the foregoing, the court finds that Defendants' Motion for Summary Judgment is due to be granted with respect to the excessive force claim against the City of Florala and against Defendant Inabinett in his official capacity. *See Loggins v. Jeans,* 841 F.Supp. 1174 (N.D.Ga. 1993) (granting motion for summary judgment in favor of county and sheriff because plaintiff failed to establish that any official policy or custom caused alleged constitutional violations).

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motions for Summary Judgment be and the same are hereby GRANTED IN PART and Plaintiff's § 1983 claims be and the same are hereby DISMISSED. Because the court has dismissed Plaintiff's federal claims and the court chooses not to exercise supplemental jurisdiction over the state law claims, it is further CONSIDERED and ORDERED that this case be and the same is hereby REMANDED pursuant to 28 U.S.C. § 1367(c)(3) to the Circuit Court of Covington County, Alabama. The Clerk of Court is hereby DIRECTED to take the necessary steps to effectuate said remand.