**Barry Lee PAYUNG, Plaintiff,**

v.

**Howard M. WILLIAMSON, individually and in his capacity as Mayor of the City of Cochran, Georgia; and the City of Cochran, Georgia, Defendants.**

**No. C.A. 87–151–1–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 26, 1990.

Christopher Coates, Milledgeville, Ga., for plaintiff.

Wilton D. Harrington, Eastman, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

The issues before the court concern whether the City of Cochran, Georgia may be held liable for the actions of its then mayor, "Happy" Howard Williamson, in terminating the employment of the city's fire chief, Barry Lee Payung, without affording him a pre-termination hearing. After a pretrial conference held on February 28, 1990, the parties filed memoranda and submitted the issue of municipal liability for the court's determination. After careful consideration of the memoranda submitted by counsel and the record as a whole, the court makes the following findings of fact and conclusions of law.

### Factual Background

In July of 1984, the City of Cochran, Georgia ("Defendant City") hired Barry Lee Payung ("Plaintiff") to serve as Fire Chief. At some time prior to January 8, 1987, Defendant City's Mayor, "Happy" Howard Williamson ("Williamson"), elicited from Plaintiff, as well as other officials of Defendant City, affidavits charging misconduct on the part of Defendant City's Clerk, Jody Lucas ("Lucas"). Williamson fired Lucas on January 8, 1987; he relied principally upon these affidavits as grounds for Lucas' termination.

On February 11, 1987, Lucas obtained a court order reinstating him as Defendant City's Clerk and calling to a halt Williamson's unauthorized investigation of Lucas. During a hearing, Plaintiff testified that certain allegations he had made against Lucas in his affidavit were false. Plaintiff told the court that he executed the affidavit only after Williamson threatened Plaintiff's job. Williamson, angered by Plain-

tiff's testimony, initiated another investigation, this time targeting Plaintiff. Williamson told members of the media he would fire Plaintiff outright once a case was built against him.[1]

On May 29, 1987, Williamson, terminated Plaintiff as Fire Chief. Williamson stated that Plaintiff had been terminated, not, as Plaintiff argues, in retaliation for Plaintiff's unfavorable testimony at the Lucas hearing, but based upon Plaintiff's "blatant disregard for personnel policy." Williamson alleges the following misconduct on the part of Plaintiff:

(1) Unauthorized absence from his post at times when his presence was required;

(2) Unauthorized use of Defendant City's vehicle;

(3) Improper Management of the fire department and failure to properly train fire department personnel;

(4) Failure to check fire hydrants;

(5) Failure to respond to an emergency fire and an automobile accident with injuries.

Williamson has provided no records to substantiate these allegations. Defendant City characterizes Williamson's actions in firing Plaintiff as the result of a "personal vendetta" against Plaintiff.

While Defendant City's personnel ordinance does not provide pre-termination hearings to discharged "employees" or "department heads," pursuant to that ordinance, Plaintiff filed an appeal with the City Council. Defendant City states that Plaintiff was employed, not under the personnel ordinance, but under the City Charter as an elected "city official" employed at will by the Mayor and the City Council.[2] Ironically, acting in apparent accordance with the termination provisions of the personnel ordinance, the City Council scheduled an appeal hearing for June 24, 1987.[3]

However, on June 17, 1987, Plaintiff filed the instant action against Williamson and Defendant City. On June 23, 1987, this court granted Plaintiff's motion for a TRO and preliminary injunction and ordered Plaintiff reinstated as fire chief of Cochran. Plaintiff and Defendants have filed memoranda with the court addressing the issue of whether Defendant City is liable for the actions of Williamson in terminating Plaintiff's employment without a pre-termination hearing.

## DISCUSSION

The case before the court requires resolution of three distinct issues:

(1) What terms governed Plaintiff's employment and dismissal;

(2) Whether Mayor Williamson acted as a final policy-maker for Defendant City;

(3) Whether Plaintiff had a present property interest in continued employment.

### I. *Plaintiff Fire Chief Payung's Employment*

Defendant City argues that Williamson exceeded his authority in unilaterally dismissing Plaintiff from his position as Fire Chief. Defendant City draws upon the Cochran City Charter in support of their position. Under the City Charter, the Mayor is designated as the City's "chief executive officer," (Chtr. § 7); however, "government of said city of Cochran shall be vested in a **city council** composed of a mayor and six aldermen." (Chtr. § 3) (emphasis added).

The mayor and aldermen are specifically authorized to **"elect** for said city annually, and for a term of one year, **unless sooner discharged,** a clerk, treasurer, marshal, chief of police, ... **chief of fire depart-**

---

**1.** Plaintiff attaches article from *The Macon Telegraph and News* 2/12/87 quoting Mayor Williamson.

**2.** The City Charter, unlike the personnel ordinance, does not provide "city officials" with an appeal to the City Council of the Mayor's employment decisions.

**3.** Defendant City attaches a copy of Plaintiff's written appeal filed with the personnel officer. (Defendants' Exhibit "A"). Within four days, the City Council met and scheduled an appeal hearing for June 24, 1987. However, Plaintiff, giving the City Council no time to act on his appeal, filed the present action with the court. (Defendant's Memorandum pp. 1–2).

ment, [etc.] ..." (Chtr. § 17: "City officers") (emphasis added). All such officers:

> "shall accept such offices subject to be suspended, removed or dismissed therefrom **at the will** of the mayor and the alderman at any time they see fit ..."

(Chtr. § 17) (emphasis added).

Plaintiff, on the other hand, directs the court to Defendant City's personnel ordinance, and argues that Williamson was by ordinance and, alternatively, by custom the final policy-maker for Defendant City. An amendment to the ordinance passed in 1979 provides:

> "A department head may be dismissed by **the Mayor of the City of Cochran** if he [department head] fails to perform work up to the standard of the classification which he holds or is guilty of any of the acts listed in Section 2, Article V." [4]

Plaintiff argues that the personnel ordinance governed both Plaintiff's employment and Williamson's actions in firing Plaintiff.

The court initially encounters some statutory obstacles to Plaintiff's argument that Williamson terminated Plaintiff pursuant to power vested in the mayor by the personnel ordinance. The ordinance specifically states, **"elected officials** shall be exempt from the provisions of this ordinance." Article I, Section 4(1): "Employees Subject to Ordinance" (emphasis added). The court points out that Defendant City's Charter specifically states that the mayor and alderman are empowered to "elect" city "officers" such as the fire department chief. The personnel ordinance neither clarifies the term "elected" nor specifically defines the term "department heads" to include the fire chief (Plaintiff).

Defendant City presents, initially, a plausible argument that the personnel ordinance did not apply to Plaintiff's employment. However, Defendant City also provides the necessary clarification to demonstrate that, contrary to this argument,

Plaintiff's employment was, indeed, governed by the provisions of the personnel ordinance.

Defendant City makes part of its record Plaintiff's appeal filed with the personnel officer. Defendant City points out that the City Council met within five days of this filing and scheduled an appeal hearing. Defendant City bemoans Plaintiff's failure to afford the City Council an opportunity to review Williamson's actions. Despite the compelling tenor of these additional points, the court looks to the City Charter and finds no references to any such appeal process. Ironically, all of these procedures are outlined, in detail, in the personnel ordinance.

With regard to terminated "department heads" the personnel ordinance provides:

> "Any department head who has been demoted **for cause,** suspended, or dismissed, shall have the right of appeal to the City Council in accordance with subsections A, B, C, and D of Article V, Section 3 ..." (emphasis added).

Specifically the relevant appeals provisions direct the aggrieved department head to file an appeal within five working days, in writing, with the office of the Personnel Officer. Section 3 further directs the City Council to schedule an appeal hearing and empowers them to overrule disciplinary actions which are not well-founded. Each one of these processes were followed by Defendant City in handling Williamson's decision to terminate Plaintiff as fire chief.[5] Accordingly, this court finds that Plaintiff's employment was, as evidenced by the processes followed by all parties, governed by Defendant City's personnel ordinance.

## II. *The Actions of Defendant Mayor "Happy" Howard Williamson*

■ Having determined the nature of Plaintiff's employment, the court must yet

---

**4.** The acts listed under Article V, Section 2, include:

> Failure to work at an acceptable level; Inexcusable absence without leave; and Violation of city rules of regulations.

**5.** The court also notes Williamson's alleged justifications for terminating Plaintiff, delineated in accordance with Personnel Ordinance Article V, Section 2: "Reasons for Disciplinary Actions."

determine whether Defendant City may be held liable for Williamson's actions in firing Plaintiff.

Plaintiff seeks to impose liability upon Defendant City under 42 U.S.C. § 1983 ("§ 1983"), for Williamson's termination of Plaintiff in retaliation for Plaintiff's in court testimony. Indeed, under the proper circumstances, a plaintiff may recover for a municipality's wrongful constraint of an employee's First Amendment rights. *See generally Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1969); *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir. 1989).

The issue of municipal liability for alleged constitutional violations at the hands of city or county officials is confused as often as it is argued. The clearest proclamation by the Supreme Court of the United States on this topic is the deceptively simple principle that Congress intended to hold municipalities responsible under § 1983 only for the execution of official policies and customs, and not under the doctrine of respondeat superior. *Monell v. Department of Social Services of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611, 638 (1978); *Owens v. Fulton County,* 877 F.2d 947, 949 (11th Cir.1989).

An important question is whether the municipal official in question, here Williamson, may be considered an official "responsible for establishing final policies with respect to the subject matter in question." *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452, 465 (1986).[6] While, in the instant case, Plaintiff and Defendants have affirmatively submitted the issue for this court's determination, such a determination should always be made by the trial judge **before** the case is submitted to a jury. *Jett v. Dallas Independent School District,* 491 U.S. ——, ——, 109 S.Ct. 2702, 2722–24, 105 L.Ed.2d 598, 627–28 (1989) (emphasis in original), *citing St. Louis v. Prapotnik,* 485 U.S.

112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107, 118 (1988). Resolution of this issue is a question of state law, which requires a review of the relevant legal materials: state and local positive law, as well as custom or usage having the force of law. Id., 491 U.S. at ——, 109 S.Ct. at 2723, 105 L.Ed.2d at 628.

In *Prapotnik,* a city employee filed a § 1983 suit for alleged constitutional violations suffered at the hands of his supervisors. The plaintiff argued that he had been demoted and transferred in retaliation for having filed grievances with the city's review board and that the defendant municipality had, therefore, violated his First Amendment rights. The Supreme Court reversed the Eighth Circuit and found no liability on the part of the defendant City of St. Louis. *Prapotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The *Prapotnik* Court, in finding that the plaintiff's dismissal was not the result of the city's final policy, stated that:

"... when a subordinate's decision is subject to review by the municipality's authorized policy makers, they have retained the authority to measure the official's conduct for conformance to their policies." *Id.,* 485 U.S. at 127, 108 S.Ct. at 926, 99 L.Ed.2d at 120.

Plaintiff, in the case *sub judice,* argues, unconvincingly, that because Williamson was the Mayor and, under the City Charter, the highest ranking official of Defendant City, Williamson cannot be considered a "subordinate" for the purposes of the court's analysis. This argument ignores the *Prapotnik* Court's language, immediately preceding that quoted that:

"When an **official's** discretionary decisions are constrained by policies not of that official's making, **those policies** ... are the act of the municipality." *Id.,* (emphasis added).

The language used by the Court in *Prapotnik* mirrors the facts of the case *sub judice;* Williamson's employment decisions

---

**6.** The court notes Plaintiff's contention, which he has entangled with his arguments concerning Williamson's status as a final policy-maker, that Defendant City's personnel ordinance, itself, vio-

lates Plaintiff's constitutional due process rights in its failure to provide for a pre-termination hearing. This argument is addressed *infra.*

were, by the very terms of the personnel ordinance, constrained by the review and appeals process of the City Council. While the term "subordinate" may not adequately describe Williamson's station, it most certainly defines the status of any disciplinary actions he might have initiated. All of his employment decisions were subject to review by the **entire** City Council.[7]

Plaintiff briefly alleges that Williamson's employment decisions were, as a matter of custom, the final policies of Defendant City. Indeed, egregious attempts by local governments to insulate themselves would not be enforced by the court. Section 1983 plaintiffs may establish the existence of a practice that, although not authorized by written law, is so permanent and well settled as to constitute a custom or usage with the force of law. *Adikes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1977); *See also Mandel v. Doe*, 888 F.2d 783 (11th Cir.1989). Plaintiff, however, provides no support for this allegation. Despite empathy for Plaintiff, it would be "something inevitably capricious to hold a municipality responsible for every decision which is perceived as 'final' through the lens of a particular fact finder's evaluation of the city's 'actual power structure.'" *Prapotnik*, 485 U.S. at 124, n. 1, 108 S.Ct. at 924, n. 1, 99 L.Ed.2d at 118, n. 1. Accordingly, because Williamson was not a "final policy-maker" of the City of Cochran, Defendant City cannot be held liable based solely upon Williamson's actions in terminating Plaintiff as fire chief.

### III. *The Personnel Ordinance of the City of Cochran, Georgia*

■ The court now turns to Plaintiff's argument that Defendant City should be held liable despite a finding that Williamson was not a final policy-maker for Defendant City. It is undisputed that Plaintiff received no pre-termination hearing and that Defendant City's personnel ordinance does not provide for such a pre-termination hearing. Plaintiff argues that he had a present property interest in continued employment and should have been afforded a pre-termination review hearing. Furthermore, Plaintiff argues, Defendant City's failure to provide such a pre-termination hearing violated Plaintiff's right to due process.

Defendant simply argues that because "Williamson was not authorized to terminate [P]laintiff ... the failure to give any pre-termination hearing was of little or no significance." (Defendant Memorandum at p. 11). Defendant should not mistake the court's ruling that Williamson was not a final policy-maker for a determination that his actions were not executed pursuant to policy set by Defendant City. Williamson followed Defendant City policy and alleged misconduct on the part of Plaintiff in accordance with Defendant City's personnel ordinance. (Personnel Ordinance Article V, §§ 2, 3, 8F, etc.; Pretrial Order p. 6). The primary issue for determination here is whether Plaintiff possessed a present property interest in retaining his position, thereby requiring a pre-termination hearing before dismissal.

It is a well-established principle of law that the acquisition of a Fourteenth Amendment property interest with accompanying procedural due process requires a legitimate claim of entitlement, not merely a unilateral expectation. *Adams v. Bainbridge–Decatur County Hospital Authority*, 888 F.2d 1356, 1363 (11th Cir.1989), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). Where, however, such a property interest does exist, "the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705, 33 L.Ed.2d at 556. For it is an essential principle of due process that such a property right shall not be impinged without affording notice and an appropriate hearing prior to discharge. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

---

7. Plaintiff points to no case which holds that mayors are, as a matter of law, the final policy-makers of municipalities. Absent such guidance the court cannot agree with Plaintiff's argument concerning Williamson's status in Defendant City Government.

"Property interests are not created by the Constitution, they are created by existing rules or understandings that stem from an independent source such as state law." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985). In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court held that state law, indeed, determines whether a property interest is created in employment. The Eleventh Circuit has recently reaffirmed this rule of law. *See Crowell v. City of Eastman,* 859 F.2d 875, 877 (11th Cir.1988).

In Georgia, generally, no one in public employment has a vested right to such employment. *Ogletree v. Chester,* 682 F.2d 1366, 1369 (11th Cir.1982), *citing Barnes v. Mendonsa,* 110 Ga.App. 464, 465, 138 S.E.2d 914, 915 (1964). Indeed, where the tenure of a officer is not set out in the law, the power to remove is generally an incident to the power to appoint. *Wright v. Gamble,* 136 Ga. 376, 71 S.E. 795 (1911). However, "a property interest [does] arise whenever the public employee can be terminated only **for cause.** *Crowell,* 859 F.2d at 877, *citing Barnett v. Housing Authority of City of Atlanta,* 707 F.2d 1571, 1576 (11th Cir.1983) (emphasis added). The court again looks to the language of Defendant City's personnel ordinance for guidance on this issue.[8] *See generally Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (Court points out that a property interest may be created by ordinance).

The personnel ordinance, in the case *sub judice* provides the Mayor with the power to terminate department heads, such as Plaintiff:

"if [department head] fails to perform work up to the standard of the classification which he holds or is guilty of any of the acts listed in Section 2, Article V."

(Personnel Ordinance § 8F, Art. V, as amended 1979).

The court notes that nowhere in the personnel ordinance are employees specifically told that their employment is subject to termination only **"for cause".**[9] The specific question, then, is whether the enactment of Defendant City's personnel ordinance created in Plaintiff, a covered employee, a present property interest subject to termination only for cause and only after a pre-termination hearing.

Despite the absence of a specific "for cause" requirement in Defendant City's personnel ordinance, personnel rules or regulations may create a property interest if they impose requirements or procedures regarding dismissals which are **"analogous"** to requiring cause. *Brown v. Georgia Department of Revenue,* 881 F.2d 1018, 1026 (11th Cir.1989). *Brown* involved the involuntary termination of a Department of Revenue employee. The court held that although the words "for cause" did not even appear in the Personnel Regulations, the language of the rules and regulations supported a finding that employees could be dismissed only for cause. *Id.*

While the *Brown* court acknowledged the existence of case law declining to transform at-will employment into employment under contract, the *Brown* court distinguishes those cases. *Id., citing Wofford v. Glynn Brunswick Memorial Hospital,* 864 F.2d 117 (11th Cir.1989) (case involved attempted enforcement of an unapproved personnel **manual** drafted and implemented **internally** by the hospital administration) (emphasis added); *Id., citing Garmon v. Health Group of Atlanta,* 183 Ga.App. 587, 359 S.E.2d 450 (1987) (plaintiff in case conceded at-will employment and did not argue she was tenured). The *Brown* court relied instead upon the language of the Georgia Supreme Court in *Clark & Stephenson v. State Personnel Board,* 252

---

**8.** The court has evaluated this issue mindful of the City Charter's provision that Plaintiff was an employee at will. However, given the court's ruling and Defendant City's record and treatment of Plaintiff's employment appeals procedure, the court must look to the city ordinance as the relevant local legislation.

**9.** The court is, however, keenly aware that the ordinance advises department heads who are dismissed, suspended, or demoted **for cause** on the proper appeal procedures to follow. (Personnel Ordinance Art. V, § 3, as amended 1979).

Ga. 548, 314 S.E.2d 658 (1984), holding that an employee was entitled to rely upon Personnel Board Regulations as the terms of his employment. Contrary cases simply point to an employee's inability to derive a property interest from unofficial sources. See, e.g. *Adams v. Bainbridge–Decatur*, 888 F.2d at 1366 (administrator's manual did not extend property rights to employees).

This court finds Plaintiff's employment in the case *sub judice*, like that in *Brown*, was not terminable at will. The personnel ordinance, adopted and implemented by the Defendant City created, under Georgia law, a presently held property right to continued employment. Defendant City's failure to provide a pre-termination hearing to it's employee deprived him of his property interests without due process of law.

Accordingly, this court finds the City of Cochran, Georgia is liable to Plaintiff for failure to provide him with sufficient pre-termination protection of his presently held property interest in continued employment.

SO ORDERED.