Cindy GIBSON, Plaintiff,

v.

Mike HICKMAN, et al., Defendants.

No. 5:97–CV–82–1 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

March 24, 1999.

Dana Prophett Johnson, Ms., Macon, GA, for Cindy Gibson, plaintiff.

Wallace Warren Plowden, Jr., Mr., Macon, GA, for Mike C. Hickman, Principal of Mary Persons High School, individually and in his official capacity, Charles Dumas, Superintendent of Monroe County School Board, individually and in his official capacity, Monroe County Board of Education, defendants.

### ORDER

OWENS, District Judge.

Before the court is Defendants' Motion for Summary Judgment [Tab # 45]. Having carefully considered the arguments presented, the relevant case law and the record as a whole, the court issues the following order.

### I. Facts

The following are the facts given in a light most favorable to the non-movant (plaintiff). During the period of time in which the alleged incidences of sexual harassment occurred, Defendant Mike Hickman was the principal of Mary Persons High School and Defendant Charles Dumas was the Superintendent of the Monroe County School Board of Education. Plaintiff Cindy Gibson was hired by the Monroe County School District in 1982 to teach at Mary Persons High School. In 1988, plaintiff was promoted to Instructional Supervisor. In 1992, plaintiff sought a title change from Instructional Supervisor to Assistant Principal. Plaintiff's request was denied. Plaintiff's 1994 renewed request for a title change resulted in Hickman allegedly stating that if she went his way, he would go her way on the promotion. Plaintiff received the title change later that year (1994). However, plaintiff's employment contract (as Assistant Principal) was not renewed on March 7, 1995. Plaintiff filed a complaint with the EEOC on July 11, 1995, alleging sexual harassment. On March 12, 1997, plaintiff filed a complaint in this Court.

According to Gibson, during her employment at Mary Persons High School she was subjected to a continuous barrage of sexual harassment from Defendant Hickman. The behavior complained of ranged from dirty stories and jokes, to verbal solicitations for sex, to physical harassment. Particularly, plaintiff alleges that the following instances occurred during her employment. In January of 1988, defendant Hickman, the principal of Mary Persons High School, put his face in hers and asked her to give him a little kiss. In the fall of 1988, Hickman commented that he wished he could put his hands "where the bulldog paws" (painted on the breast area of plaintiff's sweatshirt) were located. Later in the fall of 1988, Hickman stated that he had his rubber gloves ready (relating to plaintiff's late state of pregnancy). In March of 1989, Hickman stated he would nurse her so she would not feel so full.

Plaintiff testified that although no direct sexual advances took place between March, 1989 and the Spring of 1994, between 1992 and the Spring of 1994 she was subjected to repeated jokes and nasty sexual remarks about students and teachers. In the Spring of 1994, Hickman told her that a memo pertaining to job title changes did not include her. However, Hickman offered to meet her at some conferences and if things went along fine she would get the title change. Also in the Spring of 1994, Hickman suggested that they have an affair and if they got along alright, he would change her title to Assistant Principal. On another occasion (in the Spring of 1994), Hickman told her that "if she went his way, he would go her way," relating to the possible promotion. Hickman allegedly unbuttoned several buttons of her shirt in May of 1994. In the Fall of 1994,

Hickman commented that no one else would be interested in her sexually because she had given birth to three children. At a Parent's Night, Hickman commented that plaintiff's dress fit her shape and reached up and fondled the ruffle around the neck, touching her neck. Around the same time period, Hickman asked Plaintiff what kind of birth control she used and expressed his desire to have an affair. In the fall of 1994, Hickman mimicked a couple having oral sex and reiterated his desire to have an affair. Also that year, Hickman complimented plaintiff on her dress and stated that based on her husbands crotch he apparently liked the dress too. The last incident (the only incident which allegedly occurred within 180 days of her filing her charge with the EEOC) occurred in March of 1995 and involved Hickman looking her up and down and stating that she looked mighty cute in her little dress as his eyes rested on her breast.

Plaintiff claims that the harassment that took place affected her job performance and was conducted with the implicit threat that refusal may result in losing her job or at least being denied advancement. In 1992, plaintiff sought a job title change from Instructional Supervisor to Assistant Principal. Defendant Hickman denied her request. Plaintiff posted a grievance in regard thereto on September 16, 1992. Plaintiff also discussed the matter with Superintendent Dumas who informed plaintiff that he would uphold the principal even if she appealed. Plaintiff did not appeal. In 1994, plaintiff renewed her request for a title change. In response, Hickman allegedly stated that if she went his way that he would go her way. Plaintiff testified that when she made Dumas aware of the situation, he stated that he would take care of it. Dumas then issued a districtwide memo describing title changes of Instructional Supervisors to Assistant Principals. Hickman allegedly told plaintiff that the memo did not refer to her but that he would meet her at a conference and if they got along fine then she would get the promotion. In January

1994, plaintiff states that she again reported to Dumas that Hickman was sexually harassing her. In February, plaintiff reiterated her concerns of sexual harassment to Dumas and requested a transfer. Dumas told plaintiff to take her concerns to the Board at the next meeting and that he would get back to her about that. Plaintiff was not contacted by anyone until March 13, 1995 when she was notified that her contract had not been renewed at the March 7, 1995 meeting.

Plaintiff appealed her non-renewal and a hearing was held on May 25, 1995. At the meeting, plaintiff's counsel began presenting information to support plaintiff's claim of sexual harassment. Allegedly, plaintiff was not allowed to have witnesses testify and was limited in the amount of evidence she was allowed to present. The Board upheld the non-renewal of plaintiff's contract as Assistant Principal but she was offered a teaching job at Mary Persons High School, where Hickman was still employed.

Plaintiff initiated contact with the EEOC in April of 1995 and filed a formal complaint in July of 1995 alleging sexual harassment and sexual discrimination. The instant lawsuit was filed in United States District Court on March 12, 1997.

## II Contentions

In support of the Motion for Summary Judgment, defendants assert the following grounds; 1) plaintiff's Title VII claim is barred for failing to file with the EEOC within 180 days of an instance of sexual harassment, 2) plaintiff cannot make out a prima facie case of hostile work environment or quid pro quo sexual harassment, 3) plaintiff does not have a valid § 1983 claim against the school district because she cannot produce evidence of a custom, policy or practice of discrimination, 4) plaintiff may not maintain a § 1983 claim against Dumas in his individual capacity, 5) plaintiff cannot establish a retaliation claim, and 6) plaintiff cannot recover

against Hickman, in his individual capacity, under § 1983.

## III Discussion

### A. Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995). The movant's entitlement to judgment as a matter of law is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED. R. CIV. P. 56(c), genuine issues of material fact necessitating a trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

### B. Claims

#### 1. Plaintiff's Title VII Claims are Time Barred

██ In order to maintain a valid Title VII sexual harassment claim, a complaint must be filed with the Equal Employment Opportunity Commission within 180 days after the occurrence of the alleged discriminatory employment practice. *Blumberg v. HCA Management Co., Inc.*, 848 F.2d 642 (5th Cir.1988). Actions which occur outside the 180 day time period are not actionable and cannot be relied upon by a plaintiff to establish a claim of discrimination. *Miller v. Yellow Freight Systems, Inc.*, 758 F.Supp. 1074 (W.D.Pa.1991). However, the continuing violation theory allows a plaintiff to pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he or she can demonstrate that the act is part of an ongoing practice or pattern of discrimination by the defendant. *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir.1997). To demonstrate a continuing violation, the plaintiff first must show that at least one discriminatory act occurred within the limitations period (here 180 days). *Id.* Second, the plaintiff must show that "the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination, and instead must demonstrate a continuing pattern of discrimination." (Citation omitted). *Id.* Incidents of harassment that occurred outside the limitation period will be deemed actionable if the conduct is substantially similar and of an ongoing nature. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir.1992). However, "it is not necessary for an employee to present a prima facie case of discrimination based solely on events occurring within 180 days prior to filing an Equal Employment Opportunity Commission (EEOC) charge, if an employee alleges a continuing violation of Title VII by its employer.…" *Welch v. Delta Air Lines, Inc.*, 978 F.Supp. 1133 (N.D.Ga.1997). In other words, as in this case, if just one event occurred during the 180 day period which may not be, standing alone, sexual harassment, but this incident is alleged to be part of a continuous and related string of events which in the aggregate constitutes sexual harassment then the claim is not barred by the 180 day statute of limitations.

██ Plaintiff may proceed under the continuing violation theory despite defendant's contention that plaintiff's claim must be dismissed because the one alleged act which occurred within 180 days of the EEOC charge was not actionable sexual harassment. Plaintiff filed her complaint with the EEOC on July 11, 1995 (180 days prior is January 12, 1995). The only alleged act of sexual harassment that oc-

curred within the 180 day period preceding plaintiff's filing of a complaint with the EEOC was that which allegedly took place in March of 1995 when Hickman told plaintiff that she looked mighty cute in her little dress while resting his eyes on her breasts. The Court finds 1) that the act within the period does not have to constitute, standing alone, sexual harassment if a valid continuous violation is claimed, and 2) that the incidents of harassment alleged outside the limitation period were substantially similar to the incident occurring inside the period and were of an ongoing nature sufficient to maintain a continuing violation theory. Accordingly, defendant's motion for summary judgment is denied on this ground.

### 2. Plaintiff's Prima Facie Case of Sexual Harassment

Defendant claims that plaintiff cannot make out a prima facie case of hostile work environment or quid pro quo sexual harassment. In order to make out a prima facie case of sexual harassment, plaintiff must establish five elements: 1) she belongs to a protected group, 2) she was harassed, 3) the harassment was based upon sex; and 4) the harassment affected a term, condition, or privilege of employment and the employer knew, or should have known of the harassment and failed to take remedial action. *Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir. 1982). The first element is not disputed. Plaintiff submits and defendants refute two theories of recovery under which the remaining three elements are met, hostile environment and quid pro quo harassment.

### A. Hostile Environment

■ In assessing the hostility of an environment, the Court must look at the totality of the circumstances. Circumstances to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

As discussed in the previous section, plaintiff has a valid continuing violation theory. Accordingly, the court must look at the totality of the circumstances before and after the 180 day filing period in order to determine if material issues of fact remain. The alleged facts in this case, as detailed supra (in Facts section) and in plaintiff's memorandum in opposition to defendant's motion for summary judgment, describe an environment riddled with inappropriate behavior. Such facts raise genuine issues of material fact as to whether the work environment was sexually hostile, whether the environment unreasonably interfered with plaintiff's work performance, and whether the employer knew or should have known of the harassment and failed to take remedial action.

### B. Quid Pro Quo

■ In order to make out a prima facie case of quid pro quo sexual harassment, plaintiff must show, among other things, that her refusal to submit to unwelcome sexual advances or requests for sexual favors resulted in a tangible job detriment. *Gary v. Long,* 59 F.3d 1391 (D.C.Cir.1995). "[a] supervisor's intertwining of a request for the performance of sexual favors with a discussion of actual or potential job benefits or detriments in a single conversation constitutes quid pro quo harassment." *Nichols v. Frank,* 42 F.3d 503, 513 (9th Cir.1994).

Plaintiff has alleged facts sufficient to raise genuine issues of fact as to whether quid pro quo harassment occurred. Plaintiff claims that defendant Hickman did condition her job title change, which was denied on more than one occasion, on the performance of sexual favors. Plaintiff submits the following examples as instances on which such a solicitation occurred. Plaintiff recalled in her deposition that defendant Hickman stated, "I can send you to some conferences at the Board's expense and I can join you there. And if

we get along fine then you get your title and we don't then you don't." On another occasion, Hickman allegedly suggested he and plaintiff have an affair and if they got along alright, he would change her title to Assistant Principal. Finally, Hickman allegedly commented that if plaintiff went his way that he would go her way on the promotion. Material issues of fact, sufficient to preclude summary judgment, remain as to whether these statements conditioned plaintiff's title change on sexual favors constituting quid pro quo harassment.

## C. Notice

As discussed in *Dees*, The Supreme Court recently delineated two grounds for employer liability. *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417 (11th Cir.1999), citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

> An employer can be held directly liable for a supervisor's harassment when the employer either intended, or negligently permitted, the tortious conduct to occur. The harassment can be ascribed to the employer's negligence when the employer knew or should have known about the harassment and failed to take remedial action. *See Id.* at 2267. Second, an employer can be held vicariously liable for a supervisor's sexual harassment under any one of the following theories: 1) the supervisor holds such a high position in the company that he could be considered the employer's "alter ego"; 2) the harassment violates a nondelegable duty of the employer; 3) the supervisor uses "apparent authority" granted by the employer; or 4) the supervisor is aided in committing the harassment by the existence of his agency relationship with the employer. *Id.* ...[A]n employer is liable for sexual harassment committed by a supervisor when the harassment results in a "tangible employment action" (such as termination or unwanted reassignment) against the victimized employee. When no such tangible action occurs, however, the employer's vicarious liability is subject to a two-part affirmative defense: the employer can escape liability by demonstrating (a) that it took reasonable steps both to prevent sexual harassment and to remedy the sexually harassing conduct promptly once it was brought to the employer's attention, and (b) that the victimized employee unreasonably failed to avoid harm or utilize any remedial opportunities made available by the employer. *See Burlington,* 118 S.Ct. at 2270; *Faragher,* 118 S.Ct. at 2292–93.

*Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417, 421 (11th Cir.1999).

### Direct Liability

■ Genuine issues of material fact exist as to whether plaintiff's employer knew or should have known of the harassment and failed to take remedial action. Plaintiff contends that on numerous occasions she expressed her objections to the harassment to Defendant Hickman. She also contends that she informed Defendant Dumas on numerous occasions that Defendant Hickman was harassing her and that Defendant Dumas failed to take remedial actions. On one occasion, when Hickman recommended that plaintiff not receive a title change, Dumas allegedly stated that he would uphold Hickman's decision even if plaintiff appealed. On another occasion, when plaintiff's employment contract as assistant principal was not renewed and plaintiff again expressed her belief to Dumas that Hickman's decision had been based on her rejection of Hickman's advances, Dumas allegedly told plaintiff that she would have an opportunity to express her concerns at the next board meeting. Plaintiff claims that she was not notified of the next board meeting and when she was allowed to speak to the board, in an effort to appeal the board's acceptance of Hickman's recommendation, she and her attorney were not allowed to present their evidence. The board claims that the decision to uphold Hickman's recommendation was

made before any allegations of sexual harassment were made known. Plaintiff maintains that she personally contacted two board members prior to the decision being made and that they informed her to voice her concerns at the board meeting. Plaintiff maintains that this was sufficient actual notice to the board even if Dumas did not forward her complaints. However, even if the defendants' contentions are accepted, it would be similar to the facts in *Dees* where plaintiff was prohibited from complaining to those outside the alleged harassers. In *Dees*, the fire department had a system in place for voicing harassment complaints, but the harassers were the individuals to whom plaintiff was supposed to complain. Accordingly, plaintiff's complaints fell on deaf ears and were not remedied or forwarded to a higher authority. *See Dees* at 421. In this case, although plaintiff does not claim that Dumas harassed her, Dumas permitted Hickman's alleged harassment and neither forwarded plaintiff's concerns to the board nor arranged a suitable time in which plaintiff could voice her complaints to the board. The court finds that these allegations raise material issues of fact as to whether defendant employer should be directly liable based on its actual or constructive knowledge of the sexual harassment and its failure to take remedial actions.

### Vicarious Liability

■ Material issues of fact remain as to whether defendant employer should be vicariously liable for the alleged harassment. Facts alleged could lead a jury to determine that defendant employer is liable based on Hickman's use of apparent authority or on the theory that Hickman was aided in committing the harassment by the existence of his agency relationship with the employee. Specifically, per Hickman's own testimony, he told plaintiff that the principal of the school is in charge of the school, decides who he wants as Assistant Principal, that the superintendent is going to follow that recommendation and if plaintiff were a school principal she would want to choose her employees too. School Board Hearing transcript, pp. 40, 41, 44, 67. Hickman refers to Superintendent Dumas's role in hiring, firing or demoting as simply approving of what the principals recommend. *Id.* Furthermore, after plaintiff approached Superintendent Dumas about Hickmans' recommendation to deny her promotion to assistant principal, Dumas stated that he would support his principal if she appealed. School Board Hearing transcript, pp. 204, 205, 224. Dumas did, in fact, uphold Hickman's recommendation and neither investigated plaintiff's allegations of discrimination and harassment (beyond questioning Hickman) nor forwarded plaintiff's concerns to the board. These allegations raise material issues of fact on whether vicarious liability should exist based on Hickman's use of apparent authority granted by the employer.

■ Material issues of fact also remain as to whether Hickman was aided in committing the harassment by the existence of his agency relationship with the employee. The instant case falls within the first prong of the new test set out in *Faragher*, which applies to instances in which an employer may be vicariously liable for sexual harassment committed by a supervisor when the harassment results in a "tangible employment action" against the victimized employee. *See Dees* at 421, citing *Faragher*, at 2292–2293. Gibson alleges that the decisions to deny her request for a job-title change from Instructional Supervisor to Assistant Principal (denied several times and eventually accepted) and the non-renewal of her employment contract as assistant principal was the result of harassment by her supervisor, defendant Hickman. Plaintiff supports her contention by describing solicitations by Hickman for sexual favors in exchange for job benefits. Accordingly, genuine issues of material fact preclude summary judgment on the issue of vicarious liability.

### 3. § 1983 Claim Against Monroe County School District

In order to establish vicarious liability against the Monroe County School District

under § 1983 plaintiff is required to prove that they "adopted and promulgated" an official, unconstitutional policy. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff may establish that Defendants have adopted such an official policy in one of four ways: 1) policy statements, rules, or regulations adopted by government rule-makers, 2) custom or pattern about which the local government entity knows and condones, 3) inadequate training, supervision, or hiring, 4) or unconstitutional conduct by a final policymaking official. *Id.*

### A. Liability Based on a Policy, Rule or Regulation Adopted by Local Government

A local governmental entity is liable where an unconstitutional policy statement, rule, or regulation is formally adopted and promulgated by the governing body or a department or agency thereof. *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. (involving policy of Department of social services and Board of Education requiring pregnant employees to take unpaid maternity leaves before medically necessary); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)(personnel decision made by city council constitutes official city policy).

Plaintiff has failed to show that there has ever been a statement, rule, or regulation of the Monroe County School District, either written or otherwise, to treat women differently from any other person in regard to any matter. Therefore, Plaintiff cannot establish *Monell* liability through any such official, unconstitutional statement, rule, or regulation adopted and promulgated by defendant Monroe County School District.

### B. Liability Based on Custom or Pattern About Which the Local Governmental Entity Knows and Condones

■ Local governments are also liable when challenged conduct reflects "prac-

tices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally, random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of Saint Marys, Georgia,* 787 F.2d at 1496 (11th Cir.1986). *See e.g., Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991)("a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it"); *Gentile v. County of Suffolk,* 926 F.2d 142, 152 & 153 n. 5 (2d Cir.1991)(involving history of negligent disciplinary practice and law enforcement personnel cover-ups); *Bordanaro v. McLeod,* 871 F.2d 1151, 1155–58 (1st Cir.1989)(involving history of unconstitutional practice of entering location of suspected felon without a warrant); *Jones v. City of Chicago,* 856 F.2d 985, 995–96 (7th Cir.1988)(jury entitled to conclude that department wide history of keeping "secret files" was "consciously approved at the highest policy making level for decisions involving the police department").

Plaintiff has failed to produce evidence sufficient to establish that defendants Hickman and/or Dumas had implemented a custom or practice of harassment and/or discrimination to the extent that the Monroe County School Board knew or should have known of the unconstitutional actions. The only evidence that the School Board had actual notice of Hickman's harassment of employees is plaintiff's testimony that 1) she met with school board member James Watkins to discuss her problems with defendant Hickman on March 17, 1994 and contacted him again on March 13, 1995 after receiving notice of the non-renewal of her contract, and 2) she contacted Ben Taylor, another school board member, on March 13, 1995. While

this evidence may have given the board notice that one employee may have had a grievance against Hickman, plaintiff has not produced evidence sufficient to show that such treatment was a custom or policy (e.g. a longstanding and widespread practice). Furthermore, plaintiff has not produced evidence sufficient to show that Hickman and Dumas had a custom or policy of harassment and/or discrimination that was pervasive enough that the school board should have known of such a custom or policy. Plaintiff *has* produced evidence sufficient to raise genuine issues of material fact as to whether Hickman's alleged harassment was continuous toward Gibson (as discussed supra) and whether the Monroe County School District had actual or constructive notice of plaintiff's claims (sufficient to establish Title VII liability)(also discussed supra). However, she has not established that a custom or policy existed which promoted or allowed such harassment of her or others (sufficient to establish § 1983 liability). Accordingly, plaintiff cannot establish liability on the part of the Monroe County School Board through an unconstitutional custom or practice.

### C. Liability Based on Inadequate Training or Failure to Train

Failure to train or inadequacy of training can be the basis of local government liability where such amounts to "deliberate indifference to the rights of persons with whom the [local government officials] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A plaintiff must establish such deliberate indifference in one of two ways: 1) demonstrating a failure to train government officials in an area where there is an obvious need to train in order to avoid officials violating citizens' constitutional rights; or 2) establishing a pattern of unconstitutional conduct so pervasive so as to "put the [local government] on notice that its [officials] confront the particular situations on a regular basis, and that they often react in a manner contrary to constitutional requirements." *Id.* at 397, 109

S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1172 (11th Cir.1995); *Loggins v. Jeans*, 841 F.Supp. 1174, 1177 (N.D.Ga.1993). The plaintiff must also prove that an underlying constitutional violation occurred. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

Plaintiff has failed to provide evidence of defendants' failure to train. Defendant Hickman as well as plaintiff have testified that they have attended numerous seminars and training sessions on sexual harassment. More importantly, plaintiff makes no claim that any of the defendants were inadequately trained on the issue of sexual harassment. Certainly plaintiff has not shown inadequate training to the extent it constitutes deliberate indifference.

### D. Liability Based on Conduct of Final Policymaker

 Finally, local government liability attaches when the constitutional injury alleged results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. That is, a single decision by an official with policymaking authority can constitute official policy attributable to the government itself. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The question of who is a policy making official is for the court to decide, based on state law, not a question of fact for a jury. *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). *See* e.g., *McMillian v. Monroe*

*County,* 520 U.S. 781, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1 (1997)(county sheriff not a final policymaker for the county in matters of law enforcement, because county has no law enforcement authority under state law); *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 998–99 (11th Cir.1990)(decision to abrogate previously issued occupational license and to prohibit continued use of property for community treatment center was official decision when Board of Adjustment, highest policy making body as to zoning matters, affirmed decision of Code of Enforcement Board); *Payung v. Williamson,* 747 F.Supp. 705, 709 (M.D.Ga.1990)(mayor not final policymaker as to decision to terminate fire chief, when all employment decisions were subject to review by city council).

As discussed previously, plaintiff has not shown that the Monroe County School Board had a discriminatory custom or policy much less that they acted in conformity therewith. Furthermore, neither Principal Hickman nor Superintendent Dumas were final policymakers in regard to sexual harassment policy or employment decisions. Similar to the facts in *Payung,* since all employment decisions were subject to review by the Monroe County School District, any so called "policy" decisions made by Hickman or Dumas can not be attributable to the Monroe County School Board.

**4. § 1983 Claim Against Dumas in His Individual Capacity**

██ In order for Plaintiff to maintain an action against Defendant Dumas in his individual capacity as a supervisor, plaintiff must show that Dumas personally participated in the alleged constitutional violation or that there is a causal connection between his actions and the alleged constitutional deprivation. *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so. *Id.* The deprivations that constitute widespread abuse sufficient to

notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences. *Id.*

The Court finds that plaintiff has put forth evidence sufficient to raise genuine issues of material fact as to whether defendant Dumas had sufficient notice of harassment to the extent that he should have acted in a manner consistent with eradicating such a problem. A jury must determine whether Dumas was on notice of a continued pattern of harassment and whether he should have taken other measures to prevent further harassment.

**5. Retaliation**

██ In order to establish a prima facie case of retaliation, plaintiff must show 1) that she engaged in a protected activity, 2) that she was subsequently subjected to an adverse employment action, and 3) that there was a causal link between the protected activity and the adverse employment action. *Coutu v. Martin County Board of County Commissioners,* 47 F.3d 1068, 1074 (11th Cir.1995). Additionally, "although not specifically enumerated as an element, a plaintiff must also show that the defendant was aware of the protected expression at the time it took the adverse employment action." *Balletti v. Sun–Sentinel, Co.,* 909 F.Supp. 1539, 1549 (S.D.Fla. 1995); *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993).

██ Plaintiff was engaged in a protected activity and she was subjected to an adverse employment action (her employment contract as assistant principal was not renewed). However, plaintiff has failed to establish a causal connection between plaintiff's allegations of sexual harassment and the Monroe County School Board's decision not to renew her contract as assistant principal. Plaintiff alleges that she repeatedly complained to defendants Dumas and Hickman of the harassment. Plaintiff also alleges that she informed certain board members individually of her claims of harassment prior to the

non-renewal. Finally, plaintiff alleges that she informed the entire board of the harassment at the school board hearing (before the non-renewal decision was made). The Monroe County School Board maintains that while plaintiff may have complained about her position, she did not inform defendant Dumas or any school board member of her claims of sexual harassment prior to the employment decision. Additionally, the non-renewal decision was made prior to the hearing and was based on non-discriminatory and non-retaliatory reasons. Specifically, defendants assert that the decision was based on plaintiff's insubordination and for other good and sufficient cause. Taken in the light most favorable to plaintiff, the school board may have had actual or constructive notice of the alleged harassment, however plaintiff has produced no evidence which shows that the school board's decision was based on plaintiff's complaints of harassment. Additionally, plaintiff has offered no evidence to rebut the Monroe County School Board's position that the decision was made based on insubordination and for other good and sufficient cause. Accordingly, defendant Monroe County School Board is entitled to summary judgment on this issue.

### 6. § 1983 Claim Against Hickman in His Individual Capacity

 In order for plaintiff to recover on her sexual harassment claim against defendant Hickman in his individual capacity, plaintiff must show that the alleged harassment was sufficiently severe and pervasive so as to alter the conditions of her employment and create an abusive working environment. Further, the acts of the state employees must be under pretense of some state law. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Color (or pretense) of state law is defined as: "the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law...." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 2750, 73

L.Ed.2d 482 (1982). The pretense is lacking if the wrongful acts are not in any way related to the performance of the duties of the state employee. *Johnson v. Hackett*, 284 F.Supp. 933, 937 (E.D.Pa.1968).

Genuine issues of material fact exist as to whether the sexual harassment plaintiff experienced from Hickman was so severe and pervasive that the conditions of her employment were altered and the environment in which she worked was hostile and abusive. Furthermore, defendant was acting under color of state law as principal of the school when he abused the position given to him by the State. *See Walker v. Taylorville Correctional Center*, 129 F.3d 410, 413 (7th Cir.1997), quoting *West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)(it is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given him by the State), *See also Walker*, at 413, citing *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir.1994)(police officers "conducting themselves as supervisors for a public employer" were acting under color of state law when they allegedly engaged in sexual harassment of subordinate). Accordingly, defendant is not entitled to summary judgment on this issue.

### IV Conclusion

Having carefully considered the defendant's motion, the plaintiff's response and the file as a whole, the court reaches the following conclusions: 1) defendants' motion for summary judgment for plaintiff's failure to file her complaint with the EEOC timely is **DENIED**, 2) defendants' motion for summary judgment for plaintiff's failure to make a prima facie case of quid pro quo harassment or hostile work environment harassment is **DENIED**, 3) defendants' summary judgment motion on plaintiff's § 1983 claim against the Monroe County School District is **GRANTED**, 4) defendants' motion for summary judgment on plaintiff's § 1983 claim against Dumas

in his individual capacity is **DENIED**, 5) defendants' motion for summary judgment on plaintiff's retaliation claim is **GRANTED**, 6) and defendants' motion for summary judgment on plaintiff's § 1983 claim against Hickman in his individual capacity is **DENIED**.